**Maraland SMITH, Appellant,**

v.

**HAROLD'S SUPERMARKET, INC., et al., Respondent.**

**No. WD 34415.**

Missouri Court of Appeals,
Western District.

Dec. 4, 1984.*

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied

Jan. 29, 1985.

Application to Transfer Denied
April 2, 1985.

ent, that is, "any person entitled to inherit the estate of a decedent." *Bower v. Landa,* 78 Nev. 246, 371 P.2d 657, 661 (1962).

* Cause retransferred from the Supreme Court Sept. 14, 1984.

**860**

Joseph Y. Decuyper, Kansas City, for appellant.

James H. Ensz, Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

MANFORD, Judge.

This is an action to recover damages for wrongful death. The judgment is affirmed.

Prefatory to the recital of pertinent facts and the consideration of the points presented to this court, a few preliminary remarks to identify the parties and to clarify the development of this case are in order at this juncture of this opinion.

Appellant (plaintiff at trial and hereinafter referred to as plaintiff) originated this action for damages based upon a claim for the wrongful death of her son, William L. Halstead, against Harold Nichols and David Nichols, d/b/a Harold's Supermar-

ket, and Jack Shockley. The pleadings subsequently determined that Harold's Supermarket was a duly authorized Missouri corporation. Plaintiff filed an amended petition naming as defendants Harold's Supermarket in its corporate capacity, and Jack Shockley. Plaintiff then entered her voluntary dismissal as to Harold and David Nichols. The capacity of defendant Jack Shockley as an employee-manager of Harold's Supermarket has never been questioned and has never been an issue.

Respondents were defendants at trial and are hereinafter referred to as defendants. For purposes of this opinion, defendants denote both Harold's Supermarket and Jack Shockley, and such reference shall be collective as to both defendants, except where necessary for factual clarification and then the defendants are referred to separately.

The plaintiff was awarded $30,000.00. Plaintiff filed this appeal on the basis which becomes evident from consideration of her points on appeal infra. Liability is not an issue on this appeal as acknowledged by defendants in their brief. With this acknowledgment, no factual account relative to liability is included in this opinion.

While plaintiff formally presents four points, they are readily reducible to a single point when accompanied by a consideration and discussion of how the charged error applies to varied evidentiary matters. In summary, plaintiff charges that the trial court erred in admitting records and related evidentiary matters arising from and as a result of the juvenile record of plaintiff's deceased son, because such admission violated § 211.271(3), RSMo 1978.

In summary, the record shows that William L. Halstead (then 18 years old), the son of plaintiff, entered the defendant supermarket on September 27, 1979 on North Main Street in Richmond, Missouri. Halstead was apprehended by defendant Shockley for shoplifting a package of cigarettes. Shockley escorted and restrained Halstead in Shockley's office. Shockley

then called the local police. When the officers arrived, Halstead complained of pain from his neck down, along with an inability to move or feel his legs. He was removed to a local hospital, where he died 19 days later (October 15, 1979). Before he died, Halstead was examined, and the physician diagnosed a cervical fracture dislocation at C6–7, with quadriplegia and paralysis of the four extremities.

As the mother of William Halstead, plaintiff filed this suit under the Missouri Wrongful Death Act (§ 537.080 and § 537.-090, RSMo 1978) alleging alternatively negligent and intentional wrongdoing by defendants which resulted in the death of William Halstead. Plaintiff sought recovery for alleged loss of pecuniary assistance, his services, his association, his society, and the pleasure of his company and companionship, plus recovery of medical and funeral expenses incurred as a result of Halstead's injury and death.

During the pre-trial period, defendants sought access to records and other evidentiary matters related to the juvenile court history of Halstead, both from a foreign jurisdiction (Illinois) and the Missouri juvenile system. Dispute over the admissibility of this evidence led to the issuance of an order by the circuit court denying defendants access to the juvenile records of Halstead. In response to this order, defendants sought from this court an alternative Writ of Mandamus seeking to compel the trial court to permit defendants access to the juvenile records. In response to the alternative writ of this court, the trial court, on April 5, 1982 and by order, granted defendants access to the records.

Trial commenced on September 27, 1982, and during the course thereof, over plaintiff's objection, the juvenile record and related evidentiary matters were admitted. Plaintiff challenged the admissibility of such records and evidence as violative of § 211.271(3), RSMo 1978. The evidence closed. Judgment was entered in accordance with the jury verdict, and this appeal followed the overruling of timely-filed after-trial motions.

Plaintiff's first challenge is directed to the admission of the petition, entry of appearance, and the order of the Circuit Court of Madison County, Illinois (juvenile division) regarding the juvenile proceeding in *People v. William Halstead.* The record and order of the Illinois court revealed that William Halstead had been adjudged delinquent and was ordered placed on probation. When plaintiff and William Halstead moved to Missouri, William was placed under the supervision of the Missouri Division of Youth Services. As a result of orders of the Missouri courts (juvenile), William Halstead was twice placed in custody at the Boys Training School, Booneville, Missouri.

In order to explain the why and how of the use of the foregoing juvenile records and evidentiary matters, it must be pointed out that plaintiff called, as an expert, an economist named Dr. John O. Ward. Dr. Ward testified concerning William Halstead's earning capacity. He estimated William Halstead's future earning capacity by making assumptions, such as William Halstead being an average white 18-year-old male with 9½ years education, who entered the labor or work force at the age of 18. These assumptions were then applied to a variety of statistical sources (i.e., Bureau of Census, Detailed Characteristics of the Population, United States Summary, Handbook of Labor Statistics, Statistical Abstract of the United States, and Life Expectancy Tables). On cross-examination, Dr. Ward admitted that the historical data of any individual is significant in the determination of any one individual's performance at any particular future economic level. Dr. Ward acknowledged that his calculations did not include or give consideration to prior incarceration of William Halstead, that William Halstead's total earned income for the year 1978 amounted to only $856.29.

Upon further cross-examination, Dr. Ward stated that he undertook no additional "refinements" of his calculations beyond his initial assumptions that William Halstead was a white average male with 9½

years education who, it was further assumed, entered the labor market at age 18. Additional factors which Dr. Ward acknowledged he did not consider included the individual intellectual ability, the industry of the individual to seek out work or employment, and the refusal of a parent to permit a child to live with the parent. Dr. Ward also indicated that from his experience in determining whether a person would be employable, the person's arrest record would be an important fact.

In response to plaintiff's evidence (via her own testimony and that of Dr. Ward), defendants offered both record evidence and witness testimony concerning William Halstead. Part of this contravening evidence included the records from the Illinois Circuit Court (Juvenile Division) referenced above.

Plaintiff contends that the admission of the above-referenced juvenile records was error, as such admission violated § 211.-271(3), RSMo 1978. That statutory provision reads as follows:

> "211.271. **Court orders not to affect civil rights—not evidence, exception**
>
> . . .
>
> 3. After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter."

In her argument, plaintiff notes that there is no *civil* case within our state that has addressed this precise question, and she urges this court to adopt the interpretation of that statutory section expressed throughout numerous criminal cases in our state.

Citing to the above statutory section, plaintiff concludes that it is against the public policy of Missouri to permit defendants to use as evidence the juvenile records of the deceased William Halstead to defend against alleged pecuniary values of the deceased in an action for wrongful death. Plaintiff directs the attention of this court to that portion of the above statutory section which reads, *"and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter."* From the just-quoted language, plaintiff concludes that such records and evidentiary matters *"shall not be used for any purpose whatsoever in any proceeding, civil or criminal."*

■ Defendants confront plaintiff's argument by suggesting that this issue is res judicata, because plaintiff did not prosecute an appeal from the alternative writ of mandamus issued by this court which granted defendants access to the juvenile records. Thus, it is defendants' position that plaintiff is now estopped from asserting as error issues already decided in a separate and previous proceeding. Defendants cite to *Butler v. Manley,* 416 S.W.2d 680, 682 (Mo.App.1967), quoting, "[m]aterial facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by judgment rendered therein, and that [sic] such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties...."

Defendants' reliance upon the doctrine of res judicata as related to the instant case is correct so far as it is applicable in the instant case. The doctrine does not apply entirely because on this appeal, the issue is the admissibility of the records and related evidentiary matters. The alternative writ of mandamus previously issued by this court in this case was more narrow in its scope than assumed by defendants. That writ dealt with the accessibility of those records, etc., to defendants, and did not address the question of the admissibility of those matters at trial. Thus, this court is still faced with providing an answer to the question of whether § 211.271(3) prohibits the use of juvenile records and related evi-

dentiary matters in cases where the juvenile is deceased and the cause of action involves or interrelates to the pecuniary value of the juvenile. Stated another way, this court is required to determine the legislative intent of § 211.271(3) prior to ruling upon the present case.

It is obvious that plaintiff argues for an all-encompassing or blanket prohibition against the use of *all* juvenile records and related evidentiary matters in *all* cases not otherwise involving the juvenile in only juvenile proceedings. This court cannot agree with plaintiff's suggested interpretation of § 211.271(3). In the first instance, the statutory section must be read in its entirety, and must be considered in relation to the entire Missouri Juvenile Code (Chapter 211, RSMo 1978). *In Interest of A.D.R.*, 603 S.W.2d 575, 580 (Mo. banc 1980).

■ The purpose of the Juvenile Code, inclusive of § 211.271(3), is set forth in § 211.011 and reads as follows:

"**211.011. Purpose of law—how construed**

The purpose of this chapter is to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court. This chapter shall be liberally construed, therefore, to the end that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state and that when such child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to that which should have been given him by them."

It cannot be disputed that the overall purpose and intent of Chapter 211, inclusive of § 211.271(3), is to protect and. safeguard the best interests of the juvenile, and from such a purpose and intent our state at large derives a benefit and its best interests are served.

■ While § 211.271(3) does contain the specific term emphasized by plaintiff, i.e.,

*"and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this Chapter,"* the same section also contains limiting language immediately prior to the above quoted language. That limiting language reads, "... all reports and records of the juvenile court are not lawful or proper evidence *against the child."* (emphasis added) It is evident to this court that the prohibition against the use of juvenile court reports and records is for the *exclusive* protection of the juvenile, and does not extend to any other person or proceeding which is neither occasioned by or brought against the juvenile.

What plaintiff is suggesting in the instant case is that she should be afforded the same protection as a juvenile in her recovery of damages which rest at least in part upon the pecuniary value of the juvenile (i.e., her son in this case). This court can neither agree with nor adopt such a suggestion. While the rationale for rejecting plaintiff's suggestion is more evident in a case, such as the instant case, wherein the juvenile is deceased, it appears to this court that plaintiff's suggestion should likewise be rejected in any and all cases wherein the claim of another rests either in part or in toto upon the pecuniary value of the juvenile. If the suggestion of plaintiff was accepted, a clear analysis of the pecuniary value of a juvenile relative to another party's claim based thereon could never occur.

■ This court concludes that the legislative intent, and hence the purpose of § 211.271(3) is *to safeguard the best interest of the juvenile,* by prohibiting the use of records and reports in all cases except juvenile proceedings, *exclusively,* and that § 211.271(3) has no application in any case wherein another person seeks recovery under any claim which rests in part or in toto upon the pecuniary value of the juvenile. This ruling addresses plaintiff's contention relative to the use and admission into evidence the juvenile records from the circuit court (juvenile division) of Illinois, and like

records, reports, and related evidentiary matters from the juvenile courts of Missouri.

The instant case brings into sharp focus the public policy of our state as contrasted with the legitimate interests of a party relative to juvenile records, reports, and evidentiary matters. Plaintiff asserts that "public policy" outweighs the "legitimate interest" of a party, and thus prohibits the use of such information as evidence in non-juvenile proceedings. To be sure, as defendants assert, § 211.271(3) is a protective statute. From this court's ruling above, that protection is exclusively applicable to the juvenile, and not to other parties. Hence, use of § 211.271(3) and protection thereunder are privileges exclusively accorded the juvenile. Defendants cites to this court *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), which addressed the "legitimate interest" versus the "public policy" question. This court finds the *Davis* ruling very persuasive. The United States Supreme Court in *Davis* declared at 319, 94 S.Ct. at 1111–112:

> "The claim is made that the State has an important interest in protecting the anonymity of juvenile offenders and this interest outweighs any competing interest this petitioner might have in cross-examining Green about his being on probation. The State argues that exposure of a juvenile's record of delinquency would likely cause impairment of rehabilitative goals of the juvenile correctional procedures. This exposure, it is argued, might encourage the juvenile offender to commit further acts of delinquency, or cause the juvenile offender to lose employment opportunities or otherwise suffer unnecessarily for his youthful trangression.
>
> We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. (citations omitted) Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testi-mony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender."

*Davis* has been adopted in Missouri in *State v. Russell,* 625 S.W.2d 138 (Mo. banc 1981). See also *Ward v. Goodwin,* 345 S.W.2d 215 (Mo.1961), where in a civil proceeding the use of juvenile records was permitted for purposes of impeachment. For the same use thereof in criminal proceedings, see *State v. Knupp,* 507 S.W.2d 360 (Mo.1974).

The rule and rationale in *Davis* and *Russell,* while applied as against the argument of the state, finds equal application in the instant case against the argument of plaintiff.

The foregoing analysis and conclusions derived by this court address the error charged by plaintiff relative to her claim that the protection and privilege provided by § 211.271(3) extend to her claim for wrongful death which rests in part upon the pecuniary value of the late William Halstead as relates to the reports and records of the juvenile courts, both domestic and foreign. This court finds against plaintiff on that assertion.

Plaintiff concludes her argument by further challenging evidence in the nature of confessions, admissions, and statements made by William Halstead to a juvenile officer. Plaintiff's argument rests upon the applicability of § 211.271(3), and she reargues the public policy argument.

In contrast of course, defendants challenge plaintiff's position regarding the applicability of § 211.271(3), but they further argue that plaintiff waived any alleged privilege under the statute or any applicability of the statute, because plaintiff, both by her pleadings and her evidence, placed in issue the value of William Halstead's

services. Defendants point out that by the pleading and evidence that plaintiff pointed out that (a) William Halstead dropped out from school, (b) he was not a model boy, (c) plaintiff had disciplinary problems with him, (d) he was a poor student, and (e) due to his incarceration, her son did not continuously reside with her. Defendants further assert plaintiff's waiver by the testimony of Dr. Ward.

From this defendants declare, "It has long and often been held in this state that if one party has the right to or does inquire into a certain area or present evidence of certain facts at trial, the other party is entitled to inquire into the same area and develop those facts as might be beneficial to his side of the case, regardless of whether or not in the first instances the first party was immune from having the evidence presented." Defendants then cite to this court several cases involving the waiver of the physician-patient privilege, and ask this court to adopt the rationale therein by analogy in the instant case. This court agrees with defendants' contention.

Thus, under the facts and circumstances of the instant case, plaintiff's challenge to the additional evidence, which was neither reports nor records of the juvenile courts, must also fail. This failure is occasioned by the ruling of this court regarding the non-applicability of § 211.271(3), plus the waiver of any claim thereunder by her pleadings and evidence.

In conclusion, plaintiff's alleged error is found to be without merit because of this court's interpretation of the legislative interest expressed within § 211.271(3), and its adoption of the rule that § 211.271(3) affords exclusive protection and is hence a privilege exclusively granted to the juvenile. By such rule, this court further concludes that said statute [§ 211.271(3)] has no applicability, and hence provides no prohibition against the use of juvenile court reports, records, or any relative evidentiary matters in any claim pursued by a party other than the juvenile, wherein that claim rests in part or in toto upon the pecuniary value of the juvenile, whether the juvenile is alive or deceased.

The judgment is in all respects affirmed.

PRITCHARD, P.J., concurs.

NUGENT, J., dissents in separate dissenting opinion.

NUGENT, Judge, dissenting.

I respectfully dissent because the majority opinion works a radical change in the interpretation of the Juvenile Code, abandoning the universal view that juvenile records, for reasons of sound public policy, for most purposes must remain inviolable.

I hold these views: In an historical and enlightened pronouncement of public policy, the legislature has declared records of juvenile proceedings to be inviolate. The legislature's declaration is in broad and clear terms not subject to the instant interpretation. Even if we were free to work radical changes in the Juvenile Code's meaning, for reasons of public policy, we should not do so.

The majority opinion holds "that the prohibition against use of juvenile court reports and records is for the *exclusive* protection of the juvenile and does not extend to any other person or proceeding which is neither occasioned by or brought against the juvenile."

The part of the Code in question is subsection (3) of § 211.271 which was amended in 1969 to read in its pertinent part:

> After a child is taken into custody ... all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter.

Before the 1969 amendment the section read:

> Evidence given in cases under sections 211.011 to 211.431 is not lawful or proper

evidence against the child for any purpose whatever in a civil, criminal or other proceeding except in subsequent cases under sections 211.011 to 211.431.

The amended section stiffened the strictures against disclosure by broadening them to include the child's statements to court personnel and "all reports and records of the juvenile court."

If the amendment does anything, it indicates the legislature's heightened concern about the use to which material gathered for use in juvenile cases is put. That concern is further reflected in the 1980 amendment of § 211.321.1 which tightened the strictures against disclosure of juvenile records. As amended, that subsection 1 of § 211.321 reads:

> The proceedings of the juvenile court shall be entered in a book kept for that purpose and known as the juvenile records. These records as well as all information obtained and social records prepared in the discharge of official duty for the court shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein, unless a petition or motion to modify is sustained which charges the child with an offense which, if committed by an adult, would be a class A felony under the criminal code of Missouri, or capital murder, first degree murder, or second degree murder. In addition, whenever a report is required under section 557.026, RSMo, there shall also be included a complete list of certain violations of the juvenile code for which the defendant had been adjudicated a delinquent while a juvenile. This list shall be made available to the probation officer and shall be included in the presentence report. The violations to be included in the report are limited to the following: rape, sodomy, murder, kidnapping, robbery, arson, burglary or any acts involving the rendering or threat of serious bodily harm. The supreme court may promulgate rules to be followed by the juvenile courts in separating the records.

That amended subsection reflects a legislative concern now so strong as to prohibit even disclosure to the sentencing judge in a criminal case of all but the most serious offenses found in a defendant's juvenile records, rape, murder, and like serious juvenile offenses. Supreme Court Rules 122.01 through 122.04 reflect similar concerns for the confidentiality of juvenile records.

The mandate of these legislative enactments and court rules seems to have been consistently honored by Missouri appellate courts to the extent constitutionally permissible. The Supreme Court in *State v. Russell*, 625 S.W.2d 138, 141 (Mo.1981) (en banc), held that § 211.271 must be followed except to the extent that a defendant's Sixth Amendment right of confrontation overrides the public policy of non-disclosure of juvenile records. There, defendant complained that the trial court erred in limiting his right to cross-examine a juvenile state witness about the offenses he had committed. The court held that *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), does not permit the general credibility of a juvenile to be attacked by a record of juvenile adjudication or by unrestrained cross-examination about such adjudication or his juvenile misdeeds. The defendant may only delve into the juvenile records to prove the juvenile's bias which might arise from his motive to lie because he is suspect and subject to control of juvenile authorities. Otherwise, Missouri's public policy forbids use of the juvenile records to attack the juvenile witness' credibility.

*State v. Russell, supra*, reaffirms the court's earlier pre-*Davis* ruling in *State v. Williams*, 473 S.W.2d 388 (Mo.1971), where the court affirmed a defendant's conviction based in part on the testimony of four adult state witnesses whose juvenile records were excluded for cross-examination purposes on the basis of the public policy expressed in § 211.271(3). The court there said at 389:

> The wording of § 211.271 is clear and uneuivocal. It provides that the "records of the juvenile court * * * shall not be

used for any purpose whatsoever in any proceeding, civil or criminal, * * *." This includes the use of the records to show that a witness, whether or not at the time of trial he is an adult, has committed an act when a juvenile which if committed by an adult would have been a crime. (Elisions in original.)

This court in *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978), also held at 719–20 that, except to the extent that true Sixth Amendment confrontation questions are presented in cross-examining a witness about his juvenile record, the public policy enunciated in § 211.271(3) governs and the juvenile record of the witness may not be used in cross-examination to test general credibility.

The policy of most American legislatures and courts, including Missouri's, has long been to provide a system of investigation and disposition of juvenile cases which serves the best interests of both the children and the state. The authorities all agree that confidentiality of juvenile records is imperative in the service of those interests. Judge Wasserstrom, writing for this court in *State v. Jones*, 571 S.W.2d 741 (Mo.App.1978), said (at 744) of § 211.271(3) and the prohibition against disclosure of juvenile records:

> Moreover, this statute is to be construed in light of its purpose, which was to permit and encourage discussion and consultation between the juvenile and the juvenile officer in a relaxed, nonadversary and confidential setting. *State v. Ross*, 516 S.W.2d 311 (Mo.App.1974). This purpose has meaning when applied to statements made by a juvenile, but it has no relevance to the present situation involving the taking of fingerprints....

The best expression of the general purposes of confidentiality, however, is that of the Wisconsin Supreme Court in *State ex rel. Herget v. Circuit Court*, 84 Wis.2d 435, 267 N.W.2d 309, 316 (1978), where the court said:

> Confidentiality is essential to the goal of rehabilitation, which is in turn the major purpose of the separate juvenile justice system. In theory, the role of the juvenile court is not to determine guilt or to assign fault, but to diagnose the cause of the child's problems and help resolve those problems. The juvenile court operates on a "family" rather than a "due process" model. Confidentiality is promised to encourage the juvenile, parents, social workers and others to furnish information which they might not otherwise disclose in an admittedly adversary or open proceeding. Confidentiality also reduces the stigma to the youth resulting from the misdeed, an arrest record and a juvenile court adjudication. (Footnotes omitted.)

For the foregoing reasons, I would reverse and remand for new trial with directions that evidence of the deceased's juvenile record and the testimony of the juvenile officer be suppressed. To the extent that it might be relevant, defendant has other direct evidence of the dead boy's conduct without the use of closed juvenile court records and the testimony of the juvenile officer.

I have heretofore certified this case to the Supreme Court under the provisions of Article 5, § 10 of the Constitution of the State of Missouri and Rule 83.01 as an opinion I deemed to be contrary to the principles of law pertaining to the confidentiality of records of juvenile proceedings as declared in *State v. Russell, supra*, 625 S.W.2d at 141, *State v. Williams, supra*, 473 S.W.2d at 389, both decided by the Supreme Court, and *State v. Tolliver, supra*, 562 S.W.2d at 719–20, and *State v. Jones, supra*, 571 S.W.2d at 744, decided by this court.

The Supreme Court, after hearing arguments of the parties, has retransferred this case to us without opinion. Whatever that retransfer may mean, it does not refute the proposition that the public policy of Missouri is that for most purposes records, investigative reports, memoranda, information, and materials gathered and maintained for use in juvenile proceedings remain inviolate, the only recognized exceptions being in "other proceedings under this chapter"

mentioned in § 211.271 and in cases involving a defendant's Sixth Amendment right of confrontation. In all other cases, as the Supreme Court said in *State v. Williams, supra,* 473 S.W.2d at 389, the records shall not be used for any purpose whatsoever in any civil or criminal proceeding. That important question of statutory construction and public policy rides on the final decision in this case.