STATE of Missouri, Respondent,

v.

Bertha MAHURIN, Appellant.

STATE of Missouri, Respondent,

v.

William S. MAHURIN, Appellant.

Nos. 72754, 72755.

Supreme Court of Missouri,
En Banc.

Nov. 20, 1990.

Rehearing Denied Dec. 18, 1990.

David S. Durbin, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Bertha and William Mahurin, husband and wife, were convicted by a jury of endangering the welfare of their son, Patrick, and of the involuntary manslaughter of his twin brother, Joseph. The jury assessed punishment against William at nine months' imprisonment in the county jail for endangering the welfare of a child, and four years' imprisonment for involuntary manslaughter; and against Bertha at one year in jail and an unspecified fine for child endangerment, and seven years' imprisonment for the manslaughter. The judge, in imposing sentences, ordered the imprisonments to run concurrently and imposed no monetary fine on Bertha. Judgments were entered accordingly. Their appeals were transferred by the Court of Appeals, West-

ern District, prior to opinion because of challenges to the validity of the child endangerment statute. The judgments are affirmed.

On March 27, 1988, police were dispatched to a home on Beacon Street in Kansas City. Upon arriving, they learned that paramedics had discovered a non-breathing baby (Joseph Mahurin) and were transporting him to the hospital. Inside the home, police found filth, dirty diapers and debris, along with two small children and an infant. The infant, Joseph's two-month-old twin brother, Patrick Mahurin, lay on a bed next to two bottles, one of which contained curdled formula. Patrick was unresponsive to the officers and stared into space. When Joseph Mahurin arrived at the hospital emergency room, attempts to resuscitate him were unsuccessful. An autopsy showed that Joseph was extremely emaciated, having lost all of his body fat; his eyes were sunken; he was dehydrated and had suffered bronchial pneumonia caused by his malnourished condition. A doctor who later examined Patrick stated that he had lost his fat reserves; he was "skin and bones." Evidence at trial showed Patrick was suffering from starvation and that Joseph had died of malnutrition. The Mahurins had been given instructions on infant care upon Bertha's discharge from the hospital after the twins' birth, and Bertha was supervised by a Division of Family Services social worker in connection with her children's care.

## I.

 Appellants contend the trial court erred in overruling their motion to declare section 568.050.1(1) unconstitutional. They assert the statute is unconstitutional on its face because it is so vague that it fails to give fair notice of the conduct it proscribes; that reasonable persons could differ on whether particular conduct created a "substantial risk" to the well-being of a child; and as applied, the charge of failure to provide adequate nutrition is too indefinite to constitute a violation of the child endangerment law.

 A valid statute must give a person of ordinary intelligence a reasonable opportunity to learn what is prohibited. It must provide explicit standards against arbitrary and discriminatory application. Statutes are presumed to be constitutional and will be found unconstitutional only if they clearly violate a constitutional provision, *State v. Brown*, 660 S.W.2d 694, 697 (Mo. banc 1983); any doubt is to be resolved in favor of the law's validity. *State v. Young*, 695 S.W.2d 882, 883 (Mo. banc 1985).

 The words "substantial risk" have a plain and ordinary meaning cognizable by a person of ordinary intelligence. "If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." *Brown*, 660 S.W.2d at 697. Because a defendant's knowledge of the consequences of his or her actions must be proven, the possibility of arbitrary convictions is negated. *See State v. Dale*, 775 S.W.2d 126, 131 (Mo. banc 1989) (statute prohibiting neglect of nursing home residents held not unconstitutionally vague). The statute is not unconstitutional as applied to appellants. Starvation results from deprivation of food, and failure to provide nutritional care necessary for a child's well-being is evident. Appellants also assert that the statute is overbroad. Such a claim is not appropriate in this case because there is no First Amendment issue. *State v. Munson*, 714 S.W.2d 515, 522 n. 7 (Mo. banc 1986).

## II.

 Appellants contend the trial court erred in overruling their motion for severance. Bertha Mahurin argues that severance should have been granted because the facts involved were such that the jury would have difficulty "compartmentalizing" the evidence in that: the codefendant testified while she did not; she desired to waive the jury while he did not; and evidence admissible primarily against William Mahurin was not admissible against her. William Mahurin joins many of the same

arguments to assert that severance was necessary because his codefendant waived jury assessment and he was subject to jury assessment.

Rule 24.06 requires the court to try defendants together unless one defendant files a written motion for severance and the court finds the probability of prejudice exists, or:

(1) The defendant is subject to assessment of punishment by the jury and the defendant shows a probability of prejudice would result from this fact if he is not tried separately; or

(2) There is, or may reasonably be expected to be, material and substantial evidence not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered; or

(3) There is an out-of-court statement that is not admissible against the defendant that would be admissible against other defendants if a separate trial is not ordered unless the court finds the out-of-court statement can be limited by eliminating any reference to the defendant; or

(4) A separate trial is necessary to a fair determination of whether the defendant is guilty.

Defendant Bertha Mahurin had no right to a bench trial. *State v. Goree*, 762 S.W.2d 20, 22 (Mo. banc 1988), and she has failed to show that prejudice arose from the method of sentencing employed at trial. The transcript demonstrates that statements allegedly admissible against Bertha Mahurin and not against William Mahurin were nearly identical to statements made by William Mahurin. Several qualify as tacit admissions such that they would have been admissible against a codefendant at a separate trial. Appellants have failed to demonstrate that prejudice arose that required severance under Rule 24.06. As such, the decision to grant a motion to sever is a matter within the trial court's discretion. *Cf. State v. Dale*, 775 S.W.2d 126, 132 (Mo. banc 1989).

Appellants contend the trial court erred in overruling their motions to quash the indictment, or in the alternative for sanctions. They assert the State failed to respond properly to Bertha Mahurin's Motion for a Bill of Particulars in that the State never identified the specific statutory legal duty that made their omissions to act a violation of the child endangerment statute. They also assert that the indictment was defective in that it did not cite a particular duty to the child imposed by law. The indictment charged that the couple had failed to provide the victim, Patrick, with nutritional and medical care necessary for his well-being. Appellants argue that the child endangerment statute prohibits only affirmative acts, and that sections 556.026 and 562.011 support their argument that an omission cannot be deemed criminal unless specifically proscribed by statute.

Under section 568.050, one is guilty of child endangerment if he or she "knowingly acts in a manner that creates a substantial risk to the life, body or health of a child...." The specific omissions charged to the defendants were stated in the State's Response to the Bill of Particulars. To withhold food and medical care is to act in a manner that puts a child at risk. Failure to provide medical treatment for a child violates this statute, *State v. Dailey*, 755 S.W.2d 348 (Mo.App.1988); failure to provide necessary care for a child's well-being constitutes neglect, § 210.110, RSMo.

■ Appellants contend the trial court erred in admitting records of a juvenile court proceeding. They argue the provision in section 211.271(3) that "all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding ..." constitutes an absolute prohibition on the use of juvenile records for any purpose, against anyone. The quoted language shows the statute applies only to use of a child's statements against the child. *Smith v. Harold's Supermarket, Inc.*, 685 S.W.2d 859, 863 (Mo.App.1984). Bertha's statements in records that were part of an investigation that resulted in the removal of her children from her home were used against her. This use does not fall within the ambit of

the statute's prohibition and its intended protection to a child. Appellants' attempt to distinguish *Smith* fails because although the issues in *Smith* differ from the questions here, the statutory construction remains the same.

◼ Appellants contend the trial court erred in overruling their objection to a comment in closing argument that they claim is a direct comment on Bertha's failure to testify. The trial court has wide discretion in controlling closing argument; counsel has latitude in summaries. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1984). Absent abuse of discretion resulting in prejudice to the defendant, trial court rulings on such issues should not be overturned on appeal, *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). A prosecuting attorney's statements must be plainly unwarranted and clearly injurious to the accused to constitute an abuse of discretion. *State v. Ofield*, 651 S.W.2d 190, 194 (Mo.App.1983). Here he said, "Bertha can't talk to you about suffering." This is not a direct and certain reference to failure to testify requiring reversal. *See State v. Lawhorn*, 762 S.W.2d 820, 826 (Mo. banc 1988). Such statements are improper only if there is a calculated intent to magnify the accused's decision not to testify so as to call it to the jury's attention. *Id.* There is no evidence of such an intent.

◼ Appellants' contention that the evidence was insufficient to establish that they acted knowingly or recklessly goes to the sufficiency of evidence to permit a reasonable person to find guilt. *State v. Dunavant*, 674 S.W.2d 685, 686 (Mo.App. 1984).

A person commits the crime of involuntary manslaughter if he or she recklessly causes another person's death. § 565.024.1(1), RSMo. A person acts recklessly who "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. A person commits child endangerment, according to the version of the statute that pertains to this action, who "knowingly acts in a manner that creates a substantial risk to the life, body or health of a child...." § 568.050.1(1), RSMo 1986. A person acts knowingly "(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3. In addition to evidence already stated, health professionals gave Bertha Mahurin information on infant care when she left the hospital after the twins' birth. A social worker testified Bertha was aware that it was necessary to take the children to the hospital and that she had arranged transportation there for her older children prior to the birth of the twins. After the death of Joseph, Bertha admitted she knew that the babies were losing weight, and that Joseph was sick. Based on the physical appearance of the infants as described by examining physicians, it is reasonably certain that Bertha Mahurin should have recognized the grave condition of her twins. William, along with Bertha, was given instructions on infant care. He also should have been aware that something was wrong with the babies because of their appearance. Although he testified that the couple was separated for certain periods after the birth of the twins, he came to see the children often and was in any event obligated to see to his children's health and welfare.

### III.

◼ Appellant Bertha Mahurin contends the trial court abused its discretion in overruling her request to waive a jury trial. She asserts the issues involved in the case were highly emotional and the court was more likely to disregard the emotional elements of the case and to understand the legal arguments of the case. A criminal defendant has no absolute right to waive a jury trial. Such a right is conditioned upon

the assent of the court, and failure to sustain a motion to waive a jury trial is not an abuse of discretion. *Goree,* 762 S.W.2d 20, 22.

■ Bertha Mahurin further asserts she was statutorily entitled to punishment assessment by the court in that section 557.036.2(1), RSMo, directs that the jury will assess sentence unless "[t]he defendant requests in writing, prior to voir dire, that the court assess the punishment in case of a finding of guilt...." Appellant made the requisite request, but error, if any, did not result in prejudice to the defendant. The judge, after receiving the jury's assessment, modified the assessment to impose the year in jail and the seven years' imprisonment and omitted the monetary fine recommended by the jury.

■ Appellant Bertha Mahurin contends the trial court erred in overruling her challenge for cause concerning Venireperson Gray. She claims that Gray was not qualified to sit on the jury because Gray stated she wanted the defendant to "prove her innocence." The trial court has broad discretion in determining qualifications of prospective jurors because the judge is in a unique position to observe the intangibles indicative of a person's qualification. *State v. Lingar,* 726 S.W.2d 728, 733, 734 (Mo. banc 1987), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). The judge's ruling will not be disturbed on appeal unless it is against the evidence and a clear abuse of discretion. *Id.* at 733. The issue is whether the prospective juror's responses indicate she can evaluate the evidence impartially and fairly. *Id.* at 734. Venireperson Gray ultimately adhered to the presumption of innocence; thus the trial judge was not required to strike her for cause. *Cf. State v. Griffin,* 756 S.W.2d 475, 481 (Mo. banc 1988).

■ Appellant Bertha Mahurin charges the trial court erred in refusing to give instructions dealing with mental disease or defect excluding responsibility, MAI 306.-02. The court did instruct on mental disease or defect negating culpable mental state for both counts given, MAI 308.03.

An instruction on mental disease or defect excluding responsibility should be given only when supported by substantial evidence. *State v. Carr,* 687 S.W.2d 606, 609 (Mo.App.1985). It requires specific evidence that at the time of the act charged the defendant's mental condition must have prevented her from "knowing or appreciating the nature, quality, or wrongfulness of [her] conduct or that it made [her] incapable of conforming [her] conduct to the requirements of the law." *Id.* at 611; § 552.030.1, RSMo. Both of defendant's experts testified to her low IQ and impaired mental abilities. Nevertheless, error, if any, in the choice of instruction resulted in no prejudice. The jury had been instructed to consider whether defendant suffered from a mental disease or defect negating the culpable mental state. This instruction allowed the jury to determine whether defendant Bertha Mahurin had a mental problem that prevented her from forming the requisite intent to commit the crimes charged. In finding her guilty, the jury did not believe that she was so incapacitated that she was unable to form the *mens rea* for the crime with which she was charged. Therefore, it would be illogical to assume that the jury would find mental disease or defect excluding responsibility under the greater standard of proof required by the refused instruction, MAI 306.02.

■ Appellant Bertha Mahurin also takes issue with the admission of statements made by William Mahurin during an interview by the State Patrol; however, she made similar statements and could not have been prejudiced. She also contends that certain of her husband's statements to a doctor at the emergency room regarding Joseph's medical history were inadmissible hearsay. They were rendered admissible against Bertha because they were made in Bertha's presence and hearing, would have elicited a reply by Bertha had she taken issue with them, and were not made during a judicial proceeding or while she was in custody or under arrest. *See State v. Sutton,* 764 S.W.2d 157, 159 (Mo.App.1989). William Mahurin described Joseph's medical condition to the emergency room doctor

and stated that they had not taken the twins to the physician since birth. Had Bertha taken the babies to the doctor, she would have corrected her husband's statement. William's statements were so similar to her own that prejudice should not have resulted.

## IV.

 Appellant William Mahurin contends the trial judge erred in admitting out-of-court statements made by his codefendant, Bertha Mahurin. He refers to a phone conversation between Bertha Mahurin and a social worker where Mrs. Mahurin described some of the babies' health problems. He cites to a second conversation between his wife and the social worker where she explained that the hospital had told her to feed the babies diluted Seven–Up. He also disputes the admission of a memorandum written by Bertha.

The statements regarding the children's health did not prejudice William Mahurin because he made similar statements admitted at trial. Because his codefendant's statements were simply duplicative of those in evidence as admissions of William Mahurin, he could not have been prejudiced. *Cf. State v. Tyler*, 676 S.W.2d 922, 924 (Mo.App.1984). The remaining evidence was not harmful to William's case; hence, it was not prejudicial. The conversation with the social worker made no reference to William Mahurin, and Bertha's memorandum portrayed William as an attentive, caring father.

 Appellant William Mahurin contends the trial court erred in allowing the State two peremptory strikes in the selection of alternate jurors. He argues that under the relevant statutes no special provisions are made for increasing the number of peremptory strikes for alternate jurors when there are multiple defendants. He contends the State should have been allowed only one peremptory strike.

Jury selection in multiple defendant cases was controlled by section 546.180, RSMo 1986, at the time of trial. It provided:

2. When several defendants are tried together, the following provisions shall apply:

(1) Each defendant then on trial shall be allowed separate peremptory challenges as provided in subsection 1;

(2) The number of peremptory challenges allowed the state by subsection 1 of this section shall be multiplied by the number of defendants then on trial in each case.

The selection of alternate jurors was controlled at trial by section 494.065, RSMo 1986. It provided that "[a]lternate jurors shall be selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the principal jurors." Consequently, the method prescribed for challenging alternate jurors is the same as the method for challenging principal jurors. The number of peremptory challenges allowed the State is multiplied by two, the number of defendants on trial.

The judgments are affirmed.

All concur.