**STATE of Missouri, Respondent,**

v.

**Bethanie Ann ANDERSON, Appellant.**

**No. WD 60858.**

Missouri Court of Appeals,
Western District.

Nov. 5, 2002.

Richard Scheibe, Moberly, MO, for appellant.

Michael D. Fusselman, Moberly, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, ROBERT G. ULRICH, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Judge.

Bethanie Anderson appeals from her conviction in a court-tried case of one count of child endangerment in the second degree, § 568.050.[1] The Associate Division of the Circuit Court of Randolph County sentenced Anderson to 120 days in the county jail but suspended the execution of sentence and placed Anderson on two-years probation.

In all of her points on appeal, Anderson challenges the sufficiency of the evidence to support her conviction.[2] Where a criminal defendant challenges the sufficiency of the evidence to support his or her conviction, our review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v.*

---

**1.** All statutory references are to RSMo 2000 unless otherwise noted.

**2.** The State has elected not to file a response to Anderson's appeal.

*Hawthorne,* 74 S.W.3d 826, 828 (Mo.App. W.D.2002); *State v. Daniels,* 18 S.W.3d 66, 68 (Mo.App. W.D.2000). We accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. *Hawthorne,* 74 S.W.3d at 828. Viewed in accordance with this standard of review, the evidence presented at trial established the following.

On the evening of June 26, 2001, as it was getting dark outside, Anderson's neighbor, Connie Staiger, was sitting at home when a friend arrived and informed her that he had just seen a naked boy in the middle of Highway 24 near Staiger's home. Ms. Staiger went outside, and she observed a boy standing, naked in the middle of the highway. Ms. Staiger recognized the child to be Anderson's son, J.A., who she thought was seven or eight years old and had a disability of some type.

Ms. Staiger called to J.A. and asked him to come to her. J.A. walked across the lane of traffic to Ms. Staiger and grabbed her arm. As Ms. Staiger was walking J.A. home, J.A.'s younger sister came running up to her and told her that she would take him home. When Ms. Staiger asked if Anderson was home, the sister said that she was. After she pried J.A.'s fingers off of Ms. Staiger's arm, the sister began dragging J.A. toward the Anderson home. When she saw that J.A. and his sister had reached their home, Ms. Staiger returned to her own house.

The following day, Deputy Willie White of the Randolph County Sheriff's Department and Melissa Whisenand of the Department of Family Services went to the Anderson residence to question Anderson about the events of the previous evening in response to a hotline call. After Ms.

Whisenand told Anderson that there had been allegations that Appellant's lack of supervision had resulted in J.A. ending up in the middle of the highway, Anderson denied the allegations. Ms. Whisenand interviewed Anderson's five-year-old daughter, R.A., both in Anderson's presence and one-on-one. When she was questioning R.A. in Anderson's presence, Anderson frequently interrupted the interview.[3]

Based upon the foregoing evidence, the trial court found Anderson guilty of endangering the welfare of a child in the second degree under § 568.050.

On appeal, Anderson contends that the evidence presented at trial was insufficient to establish the requisite elements of endangering the welfare of a child in the second degree. Under § 568.050, "[a] person commits the crime of endangering the welfare of a child in the second degree if ... [sh]e with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than seventeen years old."

■ In her first point, Anderson contends that the evidence failed to establish that she committed an act that created a substantial risk to the life, body, or health of J.A. Anderson argues that no evidence was presented indicating how J.A. ended up in the middle of the highway or how that occurrence was tied to any act or omission on her part. In her second point, Anderson claims that the State failed to present evidence establishing that she acted with criminal negligence in committing any such act or omission. Anderson is correct on both counts.

The State was required to prove that Anderson acted in a manner that created a

---

3. No evidence regarding the substance of the interviews with Anderson or R.A. was presented at trial, aside from the testimony that

Anderson generally denied the allegations against her.

substantial risk to J.A.'s life, body or health. *§ 568.050*. During final argument, the State generally asserted that the evidence established that Anderson's failure to supervise J.A. resulted in J.A. being exposed to a substantial risk of physical harm from the highway.[4]

Certainly, the failure to properly supervise a child may constitute child endangerment under certain circumstances. *State v. Riggs*, 2 S.W.3d 867, 872–73 (Mo. App. W.D.1999). However, "while the failure to act may subject an individual to prosecution for child endangerment, in such cases the failure to act must pose an actual or 'practically certain' risk or danger and not just the potential for risk or danger." *Carmons v. State*, 26 S.W.3d 382, 385 (Mo.App. W.D.2000); *See, e.g., Riggs*, 2 S.W.3d at 872–73 (affirming the conviction of a mother for endangering the welfare of her child where she left her two-year-old child outside without supervision for a period of forty-five minutes after having been warned about the existence of an unfenced pond nearby).

While the State generally asserted that J.A. was exposed to dangers from the highway as a result of Anderson's failure to supervise him, the State failed to present any evidence that would support a finding that Anderson failed to properly supervise J.A. or that she knew or should have known that J.A. was outside, much less on the highway. No evidence was presented indicating how J.A. came to be in the middle of the highway. No evidence was presented indicating that J.A. had a habit of sneaking out of the house or that he had a proclivity for playing in the street. No evidence was presented indicating how long or for what reason J.A. was without supervision. Accordingly, the evidence presented at trial did not establish with any degree of certainty that J.A.'s exploits on the highway were practically certain to result from any failure on the part of Anderson to actively supervise him on the evening in question and were not simply an improbable and unfortunate occurrence. Any finding that Anderson's failure to supervise J.A. posed a substantial and unjustifiable risk of danger to J.A. could not have been based upon anything more than mere speculation and conjecture.

The State also failed to present sufficient evidence that Anderson acted in a criminally negligent manner in failing to supervise J.A. "A person 'acts with criminal negligence' or is criminally negligent when he [or she] fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." *§ 562.016.5; See also MAI–CR 322.11.* "Under this standard, 'criminal negligence' is established by the failure of defendant to be aware that the conduct involves a substantial or unjustifiable risk

---

4. In its closing argument, the State offered what amounts to a *res ipsa loquitur* argument. The State claimed that evidence that J.A. ended up in a dangerous situation is sufficient to establish that Anderson was guilty of endangering the welfare of that child, because "the mom has a duty to us all, and to that kid." The State contended that the evidence established beyond a reasonable doubt that Anderson had allowed J.A. "to leave the house naked, nighttime, and wander out naked on the highway." The State argued, "In this case, she doesn't even have sense enough to watch the kid and keep it from wandering out on the highway. It's the epitome of child endangerment."

Taken to its logical conclusion, the State's position was that a mother has a duty to watch her minor children twenty-four hours a day, seven days a week, and if they are ever exposed to any danger of any kind, the mother is guilty of child endangerment.

of the result which follows." *State v. Reichert,* 854 S.W.2d 584, 602 (Mo.App. S.D. 1993). "This necessarily requires the finding of an opportunity to be aware of the risk of the result." *Id.*

As noted, *supra,* the evidence presented at trial simply does not establish that any failure by Anderson to supervise J.A. posed a substantial risk that J.A. would end up standing in the middle of the highway or that Anderson should have been aware of such a risk. Furthermore, the State wholly failed to present sufficient evidence from which the trier of fact could reasonably ascertain whether Anderson deviated from the standard of care that a reasonable person would have exercised under the same circumstances, because the evidence does not establish what the circumstances were. The evidence provides no clue as to why J.A. was not being supervised.

In sum, from the evidence presented, no reasonable trier of fact could have found Anderson guilty of endangering the welfare of a child beyond a reasonable doubt. The evidence failed to establish the requisite *actus reus* necessary to support such a conviction. Accordingly, the trial court's judgment is not supported by the evidence and must be reversed.

All concur.