**STATE of Missouri, Respondent,**

v.

**Phyllis MULLINS, Appellant.**

**No. WD 61972.**

Missouri Court of Appeals,
Western District.

March 30, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 2004.

Application for Transfer Denied
Aug. 24, 2004.

Patrick W. Peters, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Kaye Spillars, Breck Burgess, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

The circuit court convicted Phyllis Mullins of second-degree felony murder of a three-month-old infant who was one of 18 children[1] that Mullins cared for in her

---

1. The state contended that Mullins cared for 19 children in her home, but the evidence established only that she was watching 18 children on the pertinent date.

Blue Springs home. It also convicted her of 19 counts of endangering the welfare of a child in connection with Mullins' endeavoring to care for 19 children by herself. Mullins charges the circuit court with six points of error, but she presents the points in a manner that violates Rule 84.04, forcing us to review her points only for plain error under Rule 30.20. The state concedes that insufficient evidence existed to support Mullins' conviction for endangering the welfare of one child, Corbin Eckler; hence, we reverse the circuit court's judgment as to the count relating to Eckler. We affirm the circuit court's judgment as to the remaining 18 counts of endangering the welfare of a child and the one count of felony murder in the second degree.

▆ In considering Mullins' charges of error, we view the evidence in the light most favorable to the verdict, and we ignore countervailing evidence. *State v. Smith*, 944 S.W.2d 901, 916 (Mo. banc), *cert. denied*, 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997).

On April 11, 2001, Mullins cared for 18 children in her house. Although she provided care for more than four children not related to her, Mullins did not have a license from the state authorizing her to be a childcare provider. On April 11, 2001, Mullins telephoned for emergency assistance when one of the children, three-month-old Jacob McGinnis, vomited, lost consciousness, and turned blue. Paramedics responding to Mullins' call took the infant to St. Mary's Hospital in Blue Springs where his pulmonary system stopped functioning. After physicians were able to get his heart beating again, they transferred him to Children's Mercy Hospital where he died that evening.

Jackson County's medical examiner ruled that a severe head injury inflicted in a homicide caused the child's death. The examiner concluded that an object had hit the back of the child's head with a "very, very forceful, very violent kind of injury to the head."

▆ In her first point relied on, Mullins alleges that the circuit court "committed error in denying [her] motion to dismiss for violation of section 556.041 and on double jeopardy grounds." Rule 84.04(d)(1) [2] instructs that an appellant's brief must contain points relied on that "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." The rule further instructs:

> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]." [3]

Moreover, the rule admonishes, "Abstract statements of law, standing alone, do not comply with this rule." Rule 84.04(d)(4).

Mullins' point relied on does not comply with Rule 84.04(d)(1). Her point relied on identifies the circuit court's ruling—the denial of her motion to dismiss—and concisely provides the legal reasons for her claim of reversible error—violation of § 556.041, RSMo 2000, and on double jeopardy grounds, but it does not explain the "in that" portion—that is, why the legal rea-

---

**2.** Rule 84.04 applies to civil and criminal cases. See Rule 30.06(c).

**3.** The emphasis appeared in the original.

son supports her claim of reversible error. Her point is merely an abstract statement of the law.

■ " 'Insufficient points relied on preserve nothing for this court to review.' " *Hall v. Missouri Board of Probation and Parole,* 10 S.W.3d 540, 544 (Mo.App.1999) (quoting *Green v. Douglas,* 977 S.W.2d 32, 33 (Mo.App.1998)); *see also State v. Nenninger,* 872 S.W.2d 589 (Mo.App.), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 503 (1994). Because, however, we can discern Mullins' contention from the argument portion of her brief, we exercise our discretion to review her claim rather than dismiss her point. *Great Southern Savings and Loan Association v. Wilburn,* 887 S.W.2d 581, 583 (Mo. banc 1994), and *State v. Schneider,* 97 S.W.3d 494, 496 (Mo.App.2002). We review her allegation of error, however, for plain error only. *Great Southern Savings,* 887 S.W.2d at 583; *Schneider,* 97 S.W.3d at 496; and *State v. Dowell,* 25 S.W.3d 594, 605 (Mo. App.2000).

■ Rule 30.20 authorizes us to review, in our discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Under Rule 30.20, plain error review involves a two-step process. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001). First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.' " *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995). We must determine "whether, on the face of the claim, plain error has, in fact, occurred." *Dudley,* 51 S.W.3d at 53. Errors are plain if they are evident, obvious, and clear. *State v. Hawthorne,* 74 S.W.3d 826, 829 (Mo.App.2002). In the absence of

such error, we should decline to exercise our discretion to review the claimed error under Rule 30.20. If we find plain error on the face of the claim, we may proceed, at our discretion, to the second step and consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Dudley,* 51 S.W.3d at 53.

From the face of this record, we do not discern plain error. In the argument portion of her brief, Mullins claims that the circuit court erred in entering its judgment convicting her of 19 counts of endangering the welfare of a child in the first degree because it violated her right to be free from double jeopardy. She asserts that her watching 19 children at the same time was a continuing course of conduct that could support only one count of endangering the welfare of a child. In support of her contention, she argues:

> [L]et us assume *arguendo* that a statute criminalized caring "for more than 10 children at a time." ... Under this scenario, caring for 10 children is lawful, but caring for 11 children is unlawful. Under the State's theory, when an adult begins supervising the 11th child, the 11th child subjects the adult to eleven separate criminal sanctions for all 11 children, even the 10 children who were lawfully cared for. This counting method violates the double jeopardy clause and Section 556.041 because the act is a continuing course of conduct.

We disagree.

■ "[T]he federal double jeopardy clause protects defendants not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense." *State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc 1992). It does not, however, "protect a defendant

from punishment for more than one offense arising from the same set of facts if one has in law and fact committed separate crimes." *State v. Murphy*, 989 S.W.2d 637, 639 (Mo.App.1999).

 Double jeopardy analysis regarding multiple punishments is limited to determining whether or not the General Assembly intended cumulative punishments. *McTush*, 827 S.W.2d at 186. We determine legislative intent regarding cumulative punishments by examining the statutes under which the defendant was convicted. *State v. Villa–Perez*, 835 S.W.2d 897, 903 (Mo. banc 1992).[4]

"A person commits the crime of endangering the welfare of a child in the first degree if ... [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of *a child* less than seventeen years old." Section 568.045.1(1), RSMo 2000 (emphasis added). The statute makes clear that a person may be punished for each child who was endangered. The statute shows that a unit of prosecution exists for each child, rather than each group of children, who is endangered. *See State v. Nichols*, 865 S.W.2d 435, 437 (Mo.App.1993) (the word "a" in § 571.030, RSMo, is singular, and its use indicated that each knife that the defendant carried concealed upon his person was an allowable unit prosecution); *State v. Bowles*, 754 S.W.2d 902, 911 (Mo.App. 1988) (a single act of assault by the defendant which affects two or more persons

constitutes multiple offenses); and *Murphy*, 989 S.W.2d at 639–40 (double jeopardy did not result from four convictions for felonious restraint where the defendant restrained four different victims at the same time). Mullins' contention is without merit.

 In her next point, Mullins asserts that the circuit court "committed error in failing to grant defendant's motion for a bill of particulars." This point relied on also does not provide the legal reason or explain why the legal reason supports her claim of reversible error. We, therefore, review her allegation of error for plain error only.

In the argument portion of her brief, Mullins claims that the circuit court should have granted her motion for a bill of particulars because she still does not know what acts she committed with the requisite mental state that resulted in her convictions. She complains about what she terms as inconsistency in the specificity, such as the dates, of the charges.

The information charging Mullins with felony murder in the second degree alleged: "[O]n April 11, 2001, ... Jacob M. McGinnis was killed by being shaken and impacted and as a result of the perpetration of the Class D Felony of Endangering welfare of a child under Section 568.045, committed by [Mullins] on or about April 11, 2001[.]" The information also alleged that Mullins committed 19 counts of endangering the welfare of a child "in that

---

**4.** If the statutes do not indicate whether or not the legislature intended to punish cumulatively, we resort to the general cumulative punishment statute, § 556.041, RSMo 2000, which says, "When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if (1) One offense is included in the other, as defined in section 556.046; or (2) Inconsistent findings of fact are required to establish the commission of the offenses; or (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses." *Villa–Perez*, 835 S.W.2d at 903.

between February 1, 2001, and April 12, 2001, ... [Mullins] knowingly acted in a manner that created a substantial risk to the life and body and health of [name of the child], a child less than seventeen years old, by watching [name of the child] while watching more children than she could safely care for and supervise."

When Mullins filed a motion for a bill of particulars with the circuit court, she did not request that the state be more specific concerning the date of the alleged offenses but asked only for the state to detail what acts created the substantial risk to each child and what specific risk was practically certain to occur. The circuit court denied Mullin's motion.

The circuit court's denial of Mullins' motion was not plain error. The circuit court has broad discretion in ruling upon a motion for a bill of particulars. *State v. Strughold*, 973 S.W.2d 876, 890 (Mo.App.1998). "Under Rule 23.04, if the information fails to inform a criminal defendant of the particulars of the offense sufficiently to prepare his defense, the ... court may require or permit the filing of a bill of particulars." *State v. Armentrout*, 8 S.W.3d 99, 109 (Mo. banc 1999), *cert. denied*, 529 U.S. 1120, 120 S.Ct. 1986, 146 L.Ed.2d 813 (2000).

The information charged that Mullins knowingly endangered children by watching more children than she could safely care for and supervise. This was sufficient to allow her to prepare her defense. Moreover, that the felony murder charge was more specific as to the date than the other charges does not mean it was inconsistent with the other charges. The circuit court did not abuse its discretion in denying Mullins' motion.

Next, Mullins asserts that the circuit court erred "in failing to find § 568.045.1(1) unconstitutionally vague, in that a reasonable person cannot ascertain what conduct is proscribed by the statute or, in the alternative, the information is fatally defective." This point relied on also fails to identify the circuit court's ruling sought be reviewed and fails to explain in summary fashion why, in the context of the case, the asserted legal reasons support the claim of reversible error. Hence, we review her allegation of error for plain error only.

As a preliminary matter, we determine whether or not we have jurisdiction because Mo. Const. art. V, § 3 (1945), grants exclusive jurisdiction to the Supreme Court "in all cases involving the validity ... of a statute ... of this state[.]" To deprive this court of jurisdiction, however, the constitutional issue must be real and substantial rather than merely colorable. *State v. Prowell*, 834 S.W.2d 852, 854 (Mo. App.1992). Because the Supreme Court has rejected an identical vagueness challenge in regard to the statute defining endangering the welfare in the second degree, Mullins' constitutional challenge is merely colorable and not real and substantial. *State v. Mahurin*, 799 S.W.2d 840 (Mo. banc 1990), *cert. denied*, 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991) (construing § 568.050, RSMo). The first degree and second degree statutes differ only in the mental states required.

In *Mahurin*, the Supreme Court concluded:

A valid statute must give a person of ordinary intelligence a reasonable opportunity to learn what is prohibited.... The words "substantial risk" have a plain and ordinary meaning cognizable by a person of ordinary intelligence. "If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." ... Because a defen-

dant's knowledge of the consequences of his or her actions must be proven, the possibility of arbitrary convictions is negated.

799 S.W.2d at 842. Similarly, in this case, § 568.045 is not unconstitutional as it was applied to Mullins because a person of ordinary intelligence would know that she is prohibited from knowingly acting in a manner that creates a substantial risk to the life, body, or health of a child less than 17 years old.

Mullins also asserts in the alternative that the prosecutor's information was defective because it did not specify an act or identify an imminent risk to any child. The information charged Mullins with endangering a child's welfare by watching more children than she could safely care for and supervise, and it charged Mullins with felony murder in the second degree because "Jacob M. McGinnis was killed by being shaken and impacted and as a result of the perpetration of the Class D Felony Of Endangering welfare of a child ... committed by the defendant[.]" The information specified the act and the risk: watching more children than she could safely care for and supervise. The information was sufficient to inform Mullins of the particulars of her offenses to enable her to prepare her defense.

■ In her next point, Mullins asserts that the circuit court "committed error in not suppressing [her] statements ..., in that the defendant was not *Mirandized* and the interrogating detective testified that is department policy to *Mirandize* suspects *after* they give their statement." This point relied on also failed to identify the legal reasons for the claim of reversible error; hence, we review her allegation of error for plain error only.

■ We do not discern plain error. First, Mullins admits that her statements were "not particularly damaging." Second, Mullins was not in police custody when she made them. Officers are required to advise a suspect of her basic constitutional rights before a custodial interrogation. *State v. Norton,* 904 S.W.2d 265, 271 (Mo.App.1995). Custodial interrogation occurs only when officers question the suspect after formally arresting her or subjecting her to arrest-like restraints. *State v. Dye,* 946 S.W.2d 783, 786 (Mo.App. 1997). Mullins voluntarily accompanied officers to the police station to make her statements, and she was not in custody when she made them. Mullins' contention is without merit.

■ In her next point, Mullins asserts that the circuit court "committed error in overruling [her] objection to the state's second-half closing argument, which raised an argument not raised in the first-half closing, an argument not supported by the evidence, and an argument which the state had specifically stated was not supported by the evidence." This point relied on also fails to explain in summary fashion why, in the context of the case, the asserted legal reasons support the claim of reversible error. Indeed, from the face of the point, we do not know what the argument about which Mullins complains was. Moreover, although we can identify the alleged improper argument in the argument portion of Mullins' brief, Mullins fails to acknowledge that she did not timely object to the state's argument. Hence, we review her allegation of error for plain error only.

■ Even assuming that the argument was improper, no error—plain or otherwise—could have resulted from it because this was a court-tried case. *State v. Mandrell,* 754 S.W.2d 917, 921 (Mo.App. 1988); *State v. Harris,* 710 S.W.2d 324, 326 (Mo.App.1986). In a court-tried case, "a judge is presumed to be able to disregard the most inappropriate, improper material and proceed to a fair result." *State v. Goodwin,* 65 S.W.3d 17, 24 (Mo.App. 2001).

In her final point, Mullins contends that the evidence was insufficient to support her convictions. When we review a challenge to the sufficiency of the evidence in a criminal case, we determine whether the evidence was sufficient to allow a reasonable fact finder to find the defendant guilty beyond a reasonable doubt. *Smith*, 944 S.W.2d at 916. We view the evidence and its reasonable inferences in the light most favorable to the fact finder's verdict, and we disregard any contrary evidence and inferences. *Id.*

Mullins claims that the state did not present sufficient evidence showing that she knowingly committed an act that placed the life, body, or health of a child at risk. She asserts that the state convicted her "for providing loving day care to too many children." We disagree.

Section 568.045.1(1) declares that a "person commits the crime of endangering the welfare of a child in the first degree if . . . [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old." The General Assembly intended that this "apply to situations where [a person] creates an actual risk to the life, body, or health of a child. [It was] not meant to apply to situations where there is only the potential for risk to the health of the child." *State v. Wilson*, 920 S.W.2d 177, 180 (Mo.App.1996). According to § 562.016.3(1) and (2), RSMo 2000, a person acts knowingly "[w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist . . . or . . . [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Thus, although a person's failing to act may subject her to prosecution for child

endangerment, the failure must, to support a conviction, pose an actual or "practically certain" risk or danger—not just the potential for risk or danger. *Wilson*, 920 S.W.2d at 180; *State v. Riggs*, 2 S.W.3d 867, 872–73 (Mo.App.1999).

The state's burden was to establish that Mullins' endeavoring to care for 19 children alone posed an actual or "practically certain" risk to the children. Given the circumstances in this case, the evidence showed that Mullins created a substantial risk to the life, bodies, or health of the children in that she was providing care for more children than she could safely supervise. The evidence established that, on April 11, 2001, Mullins provided daycare for 18 children, five of whom were under the age of two, in her home. A reasonable fact-finder could conclude that Mullins knew that watching this many children of this age without assistance was certain to endanger the children and was certain to create a substantial risk to the children's lives, bodies or health. Indeed, the Department of Health's Bureau of Child Care had repeatedly warned Mullins of the dangers of watching too many children.[5] Mullins knowingly put the children in a position of substantial risk by her conduct.

Moreover, the state established an actual risk associated with Mullins' endeavoring to care for 18 children in that Jacob McGinnis was violently struck in the back of the head with an object causing his death. The medical examiner testified that, once this injury was inflicted on McGinnis, the most common symptom would be coma. He said the child would be unresponsive and would not be awake and alert. The examiner said that McGinnis would not have been fussy or crying, and he would not have been able to eat or drink after the injury was inflicted. The examiner also concluded that the injury

---

**5.** Section 210.211, RSMo 2000, requires a license from the Department of Health for any person who provides daycare for more than four children unrelated by blood.

could not have been an accident. The evidence suggested that the injury happened while McGinnis was in Mullins' care.

Mullins also complains that insufficient evidence existed to convict her of endangering the welfare of certain children. She alleges that no evidence existed that Zachary Boman and Peyton Seever were present at her house on April 11, 2001. She is incorrect. Boman's parents testified that Boman was at Mullins' house on April 11, 2001. Seever's father testified that Seever was at Mullins' house on the day that the ambulance was at Mullins' house. A reasonable fact finder could infer that Seever was at Mullins' house on April 11, 2001, and saw the ambulance for McGinnis.

Mullins alleges that insufficient evidence existed to convict her of endangering the welfare of Peyton Moran, Ethan Swartz, Trent Watson, Bethany Smith, Brooklin Smith, Bailey Smith, and Ian Standley because their parents or grandparent identified these children at trial by using their first names only or by referring to them as their son or daughter. A reasonable factfinder could infer, however, from the parents' or grandparent's testimony identifying the children by their first names or from the parents' or grandparent's having the same last names as the children that they identified, that the children referred to in the information were the same children to whom the parents or grandparent referred in their testimony. Moreover, both Ethan Swartz and Bailey Smith were identified at trial by their first and last names.

 The state concedes, however, that no evidence was presented as to the charge that Mullins endangered the welfare of Corbin Eckler. Hence, because insufficient evidence existed to support Mullins' conviction for this charge, we re-

verse the circuit court's judgment as to Count V.

Mullins also contends that the state did not present sufficient evidence to establish that she endangered the welfare of a child because the information alleged the risks in the conjunctive rather than the disjunctive. The information alleged that Mullins knowingly acted in a manner that created "a substantial risk to the life and body and health" of the various children. Section 568.045.1(1) requires that the defendant have created "a substantial risk to the life, body, *or* health" of the children.[6] Mullins' contention is without merit because the state submitted the case to the circuit court in the disjunctive. Moreover, even had the state been required to do so, it established that Mullins created a substantial risk to the life and body and health of the various children.

 Finally, Mullins alleges that the state's evidence was insufficient to support her conviction for felony murder because the state did not identify which count of child endangerment was the predicate felony for the charge, and, therefore, the charge could have been based upon a count of child endangerment for which insufficient evidence existed—such as the charge for Eckler. She also contends that, because the felony murder count specified the date of the offense as April 11, 2001, and the child endangerment counts specified a range between "February 1, 2001[,] and April 12, 2001[,]" the circuit court could have concluded that the child endangerment offense upon which the felony murder was based occurred on a date other than April 11. She asserts, therefore, that the evidence was insufficient to establish the felony murder charge. A reasonable fact finder could find that Mullins committed felony murder because McGinnis "was killed by being shaken and im-

**6.** We added the emphasis.

pacted and as a result of the perpetration of the Class D Felony Of Endangering welfare of a child … committed by the defendant on or about April 11, 2001." Moreover, that the endangering the welfare of a child charge had a wider range of time for the offense than the felony murder charge has nothing to do with whether the evidence was sufficient.

We, therefore, reverse the circuit court's judgment as to the count relating to Eckler, but we affirm the circuit court's judgment as to the remaining 18 counts of endangering the welfare of a child and felony murder in the second degree.

LISA WHITE HARDWICK, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.