**STATE of Missouri, Respondent,**

v.

**Stacy R. TODD, Appellant.**

**No. WD 65090.**

Missouri Court of Appeals, Western District.

Nov. 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 2006.

Application for Transfer Denied Feb. 28, 2006.

Edward W. Brandecker, Columbia, for Appellant.

Robert Reinhardt, Boonville, for Respondent.

RONALD R. HOLLIGER, Judge.

Stacy Todd was convicted of endangering the welfare of a child in the second degree, § 568.050.1(1),[1] for leaving her nine-year-old son in her car on a hot summer day while she gambled at a casino. Ms. Todd argues on appeal that (1) the State failed to allege facts specifying any substantial risk to the child; (2) the trial court erred in considering facts not in evidence; (3) the evidence was not sufficient to find a substantial risk existed; and (4) the evidence was insufficient to find Ms. Todd met the standard for criminal negligence.

Finding no error, we affirm.

### Facts

The case was tried to the court on stipulated facts. "[W]e view the evidence in the light most favorable to the verdict, and we ignore countervailing evidence." *State v. Mullins*, 140 S.W.3d 64, 67 (Mo. App.2004) (citing *State v. Smith*, 944 S.W.2d 901, 916 (Mo. banc), *cert. denied*, 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997)). The evidence included the arresting officer's report and a written statement by Ms. Todd's son.

On August 15, 2003, shortly before 4:00 P.M., Todd parked her mini-van at the Isle of Capri Casino in 94–degree heat, with her nine-year-old son inside the car and the windows rolled up. She covered the front passenger windows with clothing and placed a sunshade in the front windshield. She instructed her son that if anyone should ask him where his mother was, he should say she went inside to look for the boy's uncle. She locked the car, left the engine running with the air conditioner on,

---

1. All statutory references are to Mo.Rev.Stat.     (2000), unless otherwise indicated.

and entered the casino. She entered the gaming floor at 3:50 P.M. and was playing cards by 3:52 P.M.

At 4:05 P.M., casino security notified a Highway Patrol officer in the Gaming Division that a boy was hiding in a vehicle in the parking lot. At 4:08 P.M., officers approached the mini-van, its engine then off. The officers found the child hiding on the floor at the front of the vehicle. An officer identified himself and showed his badge to the boy, who unlocked the door, apparently scared that he was in trouble. The boy said Ms. Todd was his mother, and the officer had her paged. When asked why she left the boy unattended in the heat, she said she was looking for someone at the casino. She did not explain why she took time to gamble, rather than returning immediately to her car. Concerned about Todd's mental state, the officer concluded it was unsafe to leave the boy in her care, and took her into custody. At Todd's request, the boy was picked up by his uncle, who was at work and not at the casino.

The trial court found Todd guilty of endangering the welfare of a child, § 568.050.1(1), and fined her $100. The trial court explained its finding of guilt, saying that the outside air temperature did not pose a substantial risk, because the child could get out of the vehicle, but that Todd's conduct created substantial risk that the child might be abducted or molested, or that the child might try to drive the car, or might leave the car and get run over in the parking lot. This appeal followed.

### Discussion

#### Standard of Review

■ In a court-tried criminal case, the standard of review is the same as in a jury-tried case, namely whether there is sufficient evidence to support the conviction. *State v. Pollard*, 941 S.W.2d 831, 833 (Mo.App.1997). "We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored." *Id.* We review questions of law *de novo*. *State v. Reed*, 157 S.W.3d 353, 357 (Mo.App.2005).

*1. The State alleged sufficient facts to show substantial risk of harm to the child.*

■ In her first point on appeal, Todd argues that she must be acquitted because the State failed to specify the precise risk that flows from leaving a nine-year-old child unattended in a locked car—with the keys—in a casino parking lot in 94-degree heat in the summer sun. Todd asserts that the charge against her, stating her *conduct* but not specifying the *risk* flowing from that conduct, was inadequate as a matter of law.

Rule 23.01 states the requirements for the indictment or information used to charge a defendant. An indictment or information substantially consistent with the model approved by the Missouri Supreme Court presumptively complies with those requirements. Rule 23.01(b). The approved charge for § 568.050.1(1) requires the State to allege the defendant's conduct and that the conduct presented a substantial risk to the life, body, and/or health of the child. MACH–CR 22.11. The approved charge does not require the State to specify, beyond the conduct charged, what risk flows from that conduct. The charge against Todd, alleging Todd's conduct which presented a substantial risk to her child, exactly followed the formula prescribed in Missouri Approved Charges–Criminal 22.11 and therefore satisfied the requirements of Rule 23.01.

As shown by the approved jury instruction, determining that the defendant's con-

duct created a substantial risk is the duty of the fact finder. The Missouri Approved Instruction for § 568.050.1(1) requires conviction if the fact finder concludes, among other things not challenged here, (1) that the defendant committed the act alleged and (2) "that in so doing, the defendant created a substantial risk" to the life, body, or health of a child. MAI–CR 3d 322.11. This makes it clear that the fact finder, in this case the trial judge, must assess whether the defendant's conduct presented a substantial risk to the life, body, or health of the child. The State must allege and prove the defendant's *conduct* giving rise to the risk, but the fact finder must determine whether that conduct created a substantial risk to the child.

Suggesting that the fact finder improperly considered risks not alleged by the State, Todd cites *State v. Jackson* for the proposition that, "[w]here the act constituting the crime is specified in the charge, the State is held to proof of that act; and a defendant may be convicted only of that act." 896 S.W.2d 77, 82 (Mo.App.1995). This accurately states the law, but it provides no aid to Todd here, where the State alleged and proved the *act* giving rise to the risk, namely leaving the child unattended in the car in 94–degree heat in the casino parking lot. Todd fails to recognize the distinction between the *act* on the one hand, and the *risk* it creates on the other. The State need merely allege and prove the act which gives rise to the risk. MACH–CR 22.11; MAI–CR 3d 322.11. The State need not elaborate on all the risks that may flow from the charged conduct. *Id.* Point denied.

*2. The trial court considered the broad nature of the risk.*

██ In her second point, Todd argues that the trial court, as fact finder, erred in considering risks to the child that the prosecutor did not allege, prove, or enter into evidence. In its judgment and order rejecting Todd's motion for acquittal and for a new trial, the trial court expressed concerns about various risks posed by Todd's conduct, such as the risk that the child might be abducted or molested, or that the child might try to drive the car, or might leave the car and get run over in the parking lot.

Todd urges us to conclude that the trial judge's consideration of the various risks posed by Todd's conduct constituted judicial notice, with its attendant restrictions. Todd points to no case, and we find none, indicating that it constitutes judicial notice for a fact finder to express a rationale underlying its conclusion that conduct like Todd's creates substantial risk to the child. We think, rather, that the trial judge contemplated "non-adjudicative" facts, which are necessary to the reasoning process. Fed.R.Evid. 201, Advisory Committee Note. "Adjudicative facts are simply the facts of the particular case." *Id.* A court or jury is not barred from considering non-adjudicative facts, because "[i]n conducting a process of judicial reasoning, as of other reasoning, not a step can be taken without assuming something which has not been proved; and the capacity to do this with competent judgment and efficiency is imputed to judges and juries as part of their necessary mental outfit." *Id.* (quoting Thayer, Preliminary Treatise on Evidence 279–80 (1889)). As the Advisory Committee Note to Federal Rule of Evidence 201 explains,

> [E]very case involves the use of hundreds or thousands of non-evidence facts.... The judicial process cannot construct every case from scratch, like Descartes creating a world based on the postulate *Cogito, ergo sum.* These items could not possibly be introduced into evidence, and no one suggests that they be.... It is apparent that this use

of non-evidence facts in evaluating the adjudicative facts of the case is not an appropriate subject for a formalized judicial notice treatment.

*Id.* Because determining whether Todd's conduct created a substantial risk is within the purview of the fact finder—*see* discussion of point one, *supra*—we need not examine non-adjudicative facts underlying the fact-finder's rationale. We only review whether the fact finder's decision was based on sufficient adjudicative facts in evidence. We review the sufficiency of the evidence in Todd's third and fourth points, *infra*. Point two is denied.

### 3. Sufficient evidence supported finding substantial risk.

In her third point on appeal, Todd argues that the evidence was insufficient to support a finding that her conduct created substantial risk. Our review of sufficiency of the evidence is limited to "determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Anderson*, 108 S.W.3d 680, 681 (Mo.App. 2002). "We accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary." *Id.* at 682.

The State needed to prove that Todd's conduct presented a "substantial risk" to her son. § 568.050.1(1). "The words 'substantial risk' have a plain and ordinary meaning cognizable by a person of ordinary intelligence." *State v. Mahurin*, 799 S.W.2d 840, 842 (Mo. banc 1990), *cert. denied*, 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). " 'Substantial' is defined as 'not seeming or imaginary: not illusive[.'] And 'risk' is defined as 'the possibility of loss, injury, disadvantage[,] or destruction.' " *State v. Brock*, 113 S.W.3d 227, 232–33 (Mo.App.2003) (citations omitted). Several cases have addressed what constitutes a "substantial risk" meriting criminal liability. The substantial risks associated with malnourishing a child have been deemed self-evident. *Mahurin*, 799 S.W.2d at 842. Physically assaulting a mother while her child wraps his arms around her to protect her presents a substantial risk to the child, though the defendant never struck the child. *Brock*, 113 S.W.3d at 229. A child-care worker who single-handedly oversaw nineteen children created a substantial risk to the children, and no further explanation of the precise nature of the risk was required. *State v. Mullins*, 140 S.W.3d 64, 70 (Mo.App.2004). This court has concluded that leaving a two-year-old unattended, outside, with an unfenced duck pond nearby created a substantial risk that wandering into the pond would harm the child. *State v. Riggs*, 2 S.W.3d 867, 872 (Mo.App. 1999). *Riggs* also clarifies that no injury or harm need result; a substantial risk may exist even though the risk does not materialize into actual harm. *Id.* at 873. Most recently, the Missouri Supreme Court decided that a mother put her child at substantial risk by leaving the child in the care of the child's father, who she knew had previously abused the child. *State v. Burrell*, 160 S.W.3d 798, 802 (Mo. banc 2005).

Missouri courts have also identified facts that do *not* constitute a substantial risk to a child. Forcing a six-year-old to drink a small juice-glass of beer does not, without more, present a substantial risk to the child. *State v. Hunter*, 939 S.W.2d 542, 545 (Mo.App.1997). Importantly, the *Hunter* court noted, "In determining whether actions [create substantial risk], we look at the totality of the circumstances as presented by the evidence." *Id.* This totality of the circumstances test was followed in *State v. Kuhn*, where the court

found that bringing a child to a home containing *non*-dangerous chemicals did not present substantial risk, although the chemicals included some of the materials needed to make methamphetamine. 115 S.W.3d 845, 849–50 (Mo.App.2003). The Missouri Supreme Court has adopted the totality of the circumstances test. *Burrell,* 160 S.W.3d at 802.

This court has found that failure to seek medical care for a child does not present a substantial risk where the child does not, in fact, require medical treatment. *State v. Wilson,* 920 S.W.2d 177, 180 (Mo.App. 1996). But "[w]here an actual risk to the child for failure to provide medical treatment exists, a parent can be held criminally liable for failing to seek such treatment even though the failure did not result in any harm to the child." *Id.* The *Wilson* court stressed that "there is a fundamental difference between a situation where the harm never actually occurred, [which may merit criminal liability,] and a situation where the danger itself never actually existed, as is the case when it is determined" that the child did not have an illness or injury requiring medical treatment. *Id.* All these cases finding no substantial risk reversed convictions because the child faced virtually *no* risk stemming from the act charged.

The undisputed evidence here, in contrast, showed that Todd left her nine-year-old son alone in a locked mini-van in a casino parking lot in the summer sun in 94–degree heat while she gambled. We hold these facts are sufficient, in the totality of the circumstances, for a fact finder to conclude that Todd's conduct presented a substantial risk to the life, body, and health of the child. The risks stemming from leaving children to their own devices, in a vehicle, with the keys, for indeterminate periods of time, in public parking lots, in hot summer sun are self-evident, and the evidence sufficed for the fact finder to conclude that the risk was substantial.

### 4. Sufficient evidence supported finding Todd acted with criminal negligence.

■ In her fourth point on appeal, Todd argues that the evidence was insufficient to support a finding that she acted with criminal negligence, the required mental state under § 568.050.1(1). However, Todd also concedes—assuming *arguendo* that her conduct created a substantial risk of the child becoming overheated, kidnapped, or abducted—that she was "aware of these risks," as evidenced by her covering some of the windows, leaving the air conditioner on, and locking the doors. We agree with Todd that the evidence indicates she was aware of the risks created by her conduct. In addition to the facts that Todd admits show her awareness of the risks, she also instructed her son to lie about why he was waiting in the car: she told him to say she went to look for someone, but two minutes after entering the gaming floor, she was playing cards. She instructed him to hide, and helped to hide him by covering some of the vehicle windows. When the officers approached the boy, he appeared concerned that he was in trouble, suggesting that even he, a nine-year-old child, knew his mother should not have left him alone.

Todd apparently concedes her awareness of the risks in order to show that she does not meet the criminal negligence requirement of *failing* to be aware. Todd misunderstands the law of culpable mental states. Criminal negligence means failing "to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would

exercise in the situation." § 562.016.5. A person acts knowingly "[w]ith respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist." § 562.016.3(1). Todd overlooks the inclusion of less-culpable mental states within more-culpable mental states: "If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts ... knowingly...." § 562.021.4. Therefore, because Todd concedes that she was aware of the risks, she necessarily concedes that she meets the requirement for criminal negligence.

Todd urges us to resolve an apparent case-law conflict over what satisfies the "knowing" mental state for child endangerment. But the knowledge requirement applies under § 568.045, not applicable here. Todd was charged under § 568.050.1(1), which requires only criminal negligence. We decline to address the mental state for a statute not applicable here. Anyway, in the time after this case was appealed, the Missouri Supreme Court has spoken on the knowledge requirement under § 568.045. *Burrell,* 160 S.W.3d at 802.

Accordingly, Todd's concession as to her awareness of the risks forces us to conclude that she satisfied the requisite mental culpability. And the evidence was sufficient for the fact-finder to conclude that Todd acted with criminal negligence. Point denied.

The judgment of conviction is affirmed.

PAUL M. SPINDEN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.