**STATE of Missouri, Plaintiff–Respondent,**

v.

**Veronica Michelle DAVIS, Defendant–Appellant.**

No. SD 32127.

Missouri Court of Appeals, Southern District.

Sept. 16, 2013.

Frederick J. Ernst, Kansas City, MO, for Appellant.

Gregory L. Barnes, Jefferson City, MO, for Respondent.

MARY W. SHEFFIELD, J.

Veronica Michelle Davis ("Defendant") appeals her convictions of two counts of first-degree endangering the welfare of a child for leaving her children in the custody of Robert Nelson ("Nelson"), a registered sex offender. *See* § 568.045.1.[1] Defendant argues the State's evidence was insufficient to prove the mental element of the offense. We disagree and affirm the trial court's judgment.

### *Standard of Review*

"Where a criminal defendant challenges the sufficiency of the evidence to support her conviction, this Court's review is limited to determining whether sufficient evidence was admitted at trial from which a

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp. (2013).

reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Burrell*, 160 S.W.3d 798, 801 (Mo. banc 2005). When we conduct this review, we "do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden*, 388 S.W.3d 522, 527 (Mo. banc 2013).

### Factual and Procedural Background

At the time of trial, Defendant had three minor children, two girls, C. and K., and one boy, J. (collectively, "the children"). Near the end of 2005 or the beginning of 2006, the children were in State custody as Defendant was hospitalized for a drug problem. While the children were in State custody, Defendant began dating Nelson.

In November 2006, Defendant told Sheena Petit ("Juvenile Officer") that Nelson was living in her home. Juvenile Officer asked for Nelson's information so she could run a background check on him. Nelson told Defendant he had been accused of touching his step-daughter. The background check conducted by Juvenile Officer confirmed Nelson was a registered sex offender. Defendant "felt no need for concern with it[,]" but Juvenile Officer told Defendant that Nelson could not have any contact with the children while they were in State custody. Defendant told Juvenile Officer she would comply with this requirement.

In May 2007, however, Juvenile Officer discovered Nelson was having contact with the children when they were staying with Defendant for weekend visits. Defendant's visits were suspended for some time. Juvenile Officer had strong concerns about the children, especially C., who was about the same age as the victim in Nelson's previous sex offender case. Nonetheless, the children were eventually returned to Defendant on December 17, 2007.

Defendant married Nelson on January 1, 2008. In February 2008, Defendant filed a petition for an order of protection from Nelson. In that petition, she described Nelson's violence towards her. She stated Nelson was "unpredictable" with her and the children. She also stated "I'm afraid he will harm us."

Sometime later, Juvenile Officer saw Defendant and C. at a grocery store. Defendant leaned down to C., pointed to Juvenile Officer and said "You don't ever tell this woman anything."

In May 2008, Defendant was remanded to the Department of Corrections on another case. In June 2008, Children's Division received a referral indicating that upon her incarceration, Defendant had left the children in Nelson's care. A Children's Division investigator, Jessica Tyrell ("Investigator"), and a sheriff's deputy went to Nelson's residence to investigate. Investigator informed Nelson she had received a referral regarding his care of the children. Nelson advised he had a power of attorney from Defendant and showed Investigator a handwritten, notarized document in which Defendant said she was giving custody of the children to Nelson. Investigator explained the children had been placed in protective custody and removed the children from the home.

After their removal, C. and K. made disclosures of sexual abuse. C. and K. were interviewed at the Lakes Area Child Advocacy Center. In one of those interviews, the interviewer asked C. if she ever told anyone about the abuse. C. replied she had told "you guys." The interviewer then asked if C. had ever told anyone else. C. said she had told her mother, Defendant.

C. also explained Defendant and Nelson had a fight "because I told." Nelson was subsequently convicted of several sex offenses involving C. and K.

Defendant was charged with two counts of first-degree endangering the welfare of a child. At the time of trial, C. was 10 years old, J. was 9 years old, and K. was 8 years old. C. testified at trial. C. explained Nelson had touched her inappropriately. C. said she did not tell Defendant that Nelson was doing things to her that she did not like, because Defendant told her not to tell her if something happened and that Defendant would kill the children if C. told.

The trial court found Defendant guilty as charged. The trial court sentenced her as a prior and persistent offender to two concurrent terms of eight years incarceration. This appeal followed.

### Discussion

In her sole point on appeal, Defendant claims there was insufficient evidence to support her conviction. Specifically, she argues

there was not sufficient evidence from which the court could find that [Defendant] was aware that her act of leaving the children in the care of Nelson was "practically certain" to result in their sexual abuse in that (a) knowledge that Nelson was a registered sexual offender for offenses that occurred in 1990 in New Mexico is not sufficient to show that [Defendant] was aware that it was practically certain that Nelson would abuse children left in his care; and (b) the State failed to submit sufficient evidence to prove that Nelson began abusing the children, or that [Defendant] was aware of such abuse, before [Defendant] was incarcerated and left her children in Nelson's care.

This argument is without merit because it ignores the standard of review.

■ When considering whether the evidence is sufficient to support a verdict, "we must look to the elements of the crime and consider each in turn." *State v. Manwarren*, 139 S.W.3d 267, 271 (Mo.App. S.D. 2004) (quoting *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993)). As charged in the present case, "[a] person commits the crime of endangering the welfare of a child in the first degree if . . . [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old[.]" § 568.045.1(1). Defendant challenges only the prosecution's proof that she acted knowingly.

■ Knowledge is defined in Section 562.016.3:

A person "acts knowingly", or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 562.016.3. "There is no bright line test to determine whether or not a person's actions knowingly create a substantial risk to the health of a child." *Burrell*, 160 S.W.3d at 802 (quoting *State v. Hunter*, 939 S.W.2d 542, 545 (Mo.App. E.D.1997)). "The State may prove a defendant's knowledge by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident." *Id.* In fact, "[d]irect proof of the required mental state (here 'knowingly') is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Gaver*, 944 S.W.2d 273, 277 (Mo.App. S.D.1997) (quot-

ing *State v. Abercrombie*, 694 S.W.2d 268, 271 (Mo.App. S.D.1985)). "In determining whether a person knowingly created a substantial risk, we look to the totality of the circumstances." *State v. Buhr*, 169 S.W.3d 170, 177 (Mo.App. W.D.2005).

■ Here, there are several circumstances from which Defendant's knowledge of the risk posed by leaving the children with Nelson can be inferred. First, in her statement at the Child Advocacy Center, C. said she told Defendant earlier about the abuse which resulted in Defendant and Nelson having a fight. Additionally, Defendant knew Nelson was a registered sex offender, and state officials warned Defendant that Nelson should not be permitted to have contact with the children. These facts constitute sufficient evidence from which a reasonable trier of fact could infer, beyond a reasonable doubt, that Defendant knowingly created a substantial risk to the life, body, or health of the children when she made Nelson their primary caretaker.

Another fact from which Defendant's knowledge may be inferred is her instruction to C. not to tell Defendant if anything happened and not to tell anything to the Juvenile Officer. In that respect, this case is similar to *State v. Todd*, 183 S.W.3d 273 (Mo.App. W.D.2005). In *Todd*, the defendant left her nine-year-old son in the car while she went into a casino to gamble. *Id.* at 275. She told her son that if anyone asked him where she was, he should explain she went inside to look for his uncle. *Id.* On appeal, the defendant argued there was insufficient evidence to demonstrate she acted with the requisite mental state. *Id.* at 279. The appellate court found the defendant's knowledge could be inferred from the instructions she gave her son. *Id.*

Here, similarly, Defendant instructed C. to lie about relevant circumstances. From these instructions to hide the truth, a rea-sonable fact-finder could infer Defendant knew her actions created a substantial risk to the children. *See id.*

■ Defendant's arguments to the contrary are without merit. First, Defendant argues the evidence was not sufficient to show she was aware her conduct "was 'practically certain' to result in their sexual abuse[.]" This argument misunderstands the nature of the facts the State was required to prove. The State was not required to prove Defendant knew the children would be harmed. *State v. Cole*, 384 S.W.3d 318, 326 (Mo.App. S.D.2012). That is, "it is the practical certainty of the *risk* of harm that the State must prove, not that actual abuse is practically certain to result." *Id.* (emphasis in original). "[H]arm to the child does not have to occur to trigger application of the statute." *Id.*(quoting *Manwarren*, 139 S.W.3d at 271).

■ Here, Defendant did not simply live with Nelson or have abstract knowledge about Nelson. She made Nelson the primary caretaker of her children while she left to serve a sentence in the Department of Corrections and left her children alone with Nelson for an extended period of time. Furthermore, there was additional evidence beyond the mere fact of Nelson's prior conviction resulting in him being a registered sex offender. C. explained she told Defendant about the abuse. Additionally, Defendant told C. not to talk to the authorities and not to even tell her if anything was happening. As discussed above these additional circumstances support an inference that Defendant knew of the risk Nelson posed to the children.

■ Finally, Defendant points to inconsistencies in the children's statements to support the argument that no abuse occurred prior to Defendant's departure and that the children never told Defendant

about the abuse prior to Defendant's departure. This argument ignores the standard of review. On appeal, we do not weigh the evidence, and we ignore all evidence contrary to the verdict. *Wooden,* 388 S.W.3d at 527. Conflicts and inconsistencies in the testimony are simply circumstances the fact-finder may consider in determining the credibility of the witness. *See State v. Letica,* 356 S.W.3d 157, 167 (Mo. banc 2011). Here, as can be seen by the finding of guilt, the fact-finder determined C.'s statement that she told Defendant about the abuse was credible in light of the surrounding circumstances. It is not the role of this Court to second-guess that determination.

In sum, there was sufficient evidence from which a reasonable trier of fact could conclude Defendant knew her act of leaving her children alone with Nelson "create[d] a substantial risk to the life, body, or health of [the children]". See § 568.045.1(1). Defendant's sole point is denied.

### Decision

The trial court's judgment is affirmed.

GARY W. LYNCH, and DON E. BURRELL, JJ., concur.