**The STATE of Ohio, Appellee,**

v.

**MORTON, Appellant.**

[Cite as *State v. Morton* (2000), 138 Ohio App.3d 309.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990760.

Decided June 23, 2000.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Scott A. Ruben-stein,* Assistant Prosecuting Attorney, for appellee.

*Daniel J. James,* for appellant.

HILDEBRANDT, Presiding Judge.

Defendant-appellant, Kathleen Morton, appeals the judgment of the Hamilton County Municipal Court convicting her of endangering children, a misdemeanor of the first degree. She was convicted of the offense following a bench trial. Morton advances two assignments of error in support of this timely appeal. Because we find neither assignment to have merit, we affirm the judgment of the court below.

The trial transcript indicates that, on a hot day in June 1999, Morton and her roommate, Sandra McQueen, drove eight children to a shopping center. Morton was the foster parent of seven of the children, including the victim, Tylisha, who

was asleep in a car seat behind the driver's seat.[1] Morton was the adoptive parent of the eighth child, Ryan. Ryan had become ill, and Morton was cleaning him as the others departed for the store. After tending to Ryan, Morton closed the automobile and made her way to the store, leaving Tylisha behind.

Approximately thirty minutes later, Nadine Young observed Tylisha in the locked van while she was proceeding through the parking lot to enter the store.[2] Young attempted to open the van but found that its doors were locked. Young observed that the child was perspiring so profusely that perspiration had pooled in her eye sockets. She also noted that Tylisha's breathing was labored.

Young called 911 from her cellular telephone, and police officers from Colerain Township responded. In about five minutes, the officers opened the van's locked doors, and Young retrieved the child from her car seat. Young testified that the heat that emanated from the van was stifling. Young removed Tylisha's perspiration-soaked clothing, and shortly thereafter, Morton returned to the van.

In her first assignment of error, Morton contends that the conviction for endangering children was based upon insufficient evidence. The relevant inquiry for a court reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

The child-endangering statute, R.C. 2919.22(A), provides that "[n]o person, who is the parent * * * or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The state must prove that the defendant acted recklessly to establish a violation of R.C. 2919.22.[4] R.C. 2901.22(C) provides that "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the

1. These children had been placed with Morton by the Hamilton County Department of Human Services.

2. Young testified that she held a bachelor's degree in nursing and that she was employed as an obstetric nurse.

3. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.

4. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph one of the syllabus.

consequences, he perversely disregards a known risk that such circumstances are likely to exist."

■ Morton first argues that leaving a three-week-old child locked in a van for thirty to forty minutes on a hot summer day did not constitute recklessness. This contention is not supported by the record.

The largely undisputed evidence adduced at trial was that Morton had failed to take the necessary measures to ensure that Tylisha was receiving the care that a three-week-old infant requires. Morton testified that she assumed that McQueen or one of the older children had taken Tylisha into the store while she was attending to Ryan. But Morton acknowledged that the children were already out of her line of sight before she left her van and that she had not seen McQueen take Tylisha out of the van. Morton did not check the van herself to ensure that all of the children were properly supervised. Morton also acknowledged that she later observed McQueen in the store at least twice without the child. Moreover, Morton's assertion that she believed Tylisha to be with one of the older children was contradicted by her admission that the older children were not allowed to care for the baby outside her presence. Construing the evidence in a light most favorable to the prosecution, and bearing in mind the absolute dependence of a three-week-old child on her parent or guardian, we hold that the trial court could have properly concluded that Morton's failure to ascertain the whereabouts of Tylisha constituted a heedless indifference to the consequences of leaving the child unattended in the vehicle.

■ Morton next posits that the state failed to prove that her conduct created a "substantial risk" of harm to the child The term "substantial risk" is defined in R.C. 2901.01(A)(8) as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Again, the record does not support Morton's contention.

Young's testimony indicated that Tylisha had been in the closed van so long that she was perspiring profusely and that her breathing was labored. Because of the risk of dehydration, Young instructed Morton to give Tylisha her bottle to replenish lost fluids. Young further testified, without objection, that she cautioned Morton that had Tylisha remained in the van much longer, she would have been in a serious medical condition. Although the record also demonstrates that Tylisha did not in fact need further medical attention, the state nonetheless provided ample evidence that Morton had created a substantial risk of harm to the child.

■ In her second assignment of error, Morton contends that her conviction was against the manifest weight of the evidence. To reverse a trial court's decision as against the manifest weight of the evidence, a reviewing court must

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[5]

■ Though the assignment of error is phrased in terms of the manifest weight of the evidence, Morton first takes issue with several questions that the trial court posed to her during her testimony. Those questions related to the amount that Morton was reimbursed for taking custody of the foster children. While we cannot discern the relevance of the questions, we also cannot accept Morton's suggestion that the questions reflected a bias against her on the part of the trial court or otherwise tainted the trial. In the context of the entire proceedings, the questions were inconsequential, and we find no prejudicial error in the manner in which the trial court conducted the trial.

■ Morton also cites as error the trial court's decision to take judicial notice that there was a heat emergency at the time of the events in question and the court's reference to the existence of a "greenhouse effect" inside the vehicle. Morton argues that there was no evidence adduced at trial to support the taking of judicial notice of a heat emergency or the possibility that a "greenhouse effect" in some way added to the risk posed to the child. She further argues that the court improperly relied upon its purported knowledge of the heat emergency and the "greenhouse effect" in convicting her. We disagree.

By Morton's own admission, the weather was warm enough to necessitate air conditioning in the van during their trip to the shopping center, and numerous witnesses indicated that the weather was hot and humid on the day in question. Further, Young testified that the temperature inside the van was stifling when Tylisha was taken from it. Therefore, even though there was arguably no basis in the evidence for the trial court's statements, the evidence as to the weather was uncontradicted, and we find no prejudicial error in the court's comments from the bench. Morton's second assignment of error is accordingly overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WINKLER, J., concurs.

PAINTER, J., dissents.

---

5.  See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547.

Painter, Judge, dissenting.

The state must prove that the defendant acted recklessly.[6]  While Ms. Morton was negligent in not keeping good count of the children, and in not keeping the infant in her direct care, I am not willing to believe that she acted "with heedless indifference to the consequences," and "perversely" disregarded a known risk that her conduct would cause harm to the child.[7]

Not all negligence by parents that could possibly result in harm to their children is criminal conduct, as this court has held before.[8]

This case is an example of the tendency to brand parents as criminals because of lapses in judgment.  Ms. Morton should be applauded for being a foster parent—though it does seem that an infant might be better placed where the caregiver has fewer parenting responsibilities—not convicted of a crime.

**6.** *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975.

**7.** R.C. 2901.22(C).

**8.** See, *e.g., State v. Martin* (1999), 134 Ohio App.3d 41, 730 N.E.2d 386.