WELCH, Judge.
*1203 Following a jury trial, the appellant, Monica Nyree Harris, was convicted in the Morgan Circuit Court of child abuse, see § 26-15-3, Ala. Code 1975, for leaving her six-week-old baby, N.R., unattended in a vehicle while Harris was in a store. Harris was sentenced to one year and one day in prison, which was suspended, and she was ordered to serve 18 months of supervised probation. This appeal followed.
The State's evidence tended to show that on August 24, 2016, police were dispatched to the Committee of Church Cooperation ("CCC") facility in Decatur in response to a 911 emergency call that there was an unattended child in a vehicle. Officer Walter Segars with the Decatur Police Department testified that when he arrived he located a small white car, that the windows were up, that there was a fleece blanket in the backseat, and that the child was no longer in the vehicle. Harris was holding her six-week-old son. Officer Segars testified that it was very hot that day and that the baby was sweating "very badly," but Harris was not. (R. 127.) He took Harris into custody. Police testimony showed that the temperature at approximately the time the baby was left in the car was 91 degrees.
Teresa Martin testified that on August 24, 2016, she went with a friend to CCC. She said that when they got out of the car at CCC they immediately heard "[a] child hollering" and "screaming and crying." (R. 41.) Martin testified: "After I looked in there, in the car, I couldn't see the baby. It was covered up. I couldn't see it, but I knew it was in there. And I was hollering at [my friend]: There's a baby crying." (R. 42.) The baby, she said, was lying flat and was covered with a baby blanket from head to toe. The windows of the car, she said, were all up and the engine of the car was not running. (R. 43.) Martin said that she ran into the center and started "holler[ing]" and that a woman ran out to the car and opened the door and got the baby out. (R. 43.) The baby was wearing a long-sleeve shirt and jeans.
Leslie Williams testified that she is an intake processor at CCC, that she determines what services are requested, and that CCC maintains a clothing closet for those in need. On August 24, 2016, she said, Harris came in with her baby about 9:00 a.m. She told Harris that the hours for the CCC clothing closet had passed, that children were not allowed in the facility, and that she would need to get a babysitter and come back at 1:00 p.m. that day. Williams said that Harris came back that day at around 12:45 p.m., got in line, and was there about 20 or 30 minutes before "the commotion started." (R. 83.) Williams said: "Two ladies came into the office stating that they heard noise from a car. I then, remembered that that was the car that [Harris] got out of and there's no partition separating my office part from the clothing closet. So she must have heard, and she went outside." (R. 83.) Martin said that Harris brought the baby inside the facility and that Martin took the baby to the break room where it was cooler. The baby, she said, was hot to the touch.
Derrell Willis, a paramedic with the City of Decatur, testified that he was dispatched to CCC in response to a report that a baby had been locked in a car. He said that the child looked to be about one month old and that he was crying and was sweaty. He transported the child to Decatur General Hospital.
Dr. Robert H. Williams, an emergency-room doctor at Decatur General, testified *1204 that he treated N.R. for heat-related issues. He stated that, by the time he saw the child, the child was doing better because he had been in air conditioning and had been given a lot of water. Dr. Williams stated that he diagnosed the child with hyperthermia, a nonlife-threatening diagnosis.
Officer Jarrod Birchfield with the Decatur Police Department testified that he questioned Harris after she was taken into custody. He testified that he read Harris her Miranda [1] rights, that he went over those rights with her, and that Harris indicated that she was willing to talk, and she signed a rights-waiver form. Harris made the following statement to Officer Birchfield:
"This morning I went to the Committee for Church Cooperation, the CCC, to get clothes for me and [N.R.]. I was told by a worker there that I could not get clothes until later that day. Around 1:15 p.m. I went back to the CCC to get the clothes. I was driving my white Nissan Altima. I brought my six-week-old child back with me because I didn't have anyone to watch him. I knew when I got there that I could not take him inside with me.
"I turned my car off, left the windows up, and left [N.R.] inside the car. There was a blanket draped over his car seat to keep the sun out of his eyes. I knew that it was hot outside, and it would get dangerous hot inside the car where [N.R.] was. I wasn't thinking like a mother should and went into the store to get the clothes. I got some outfits for [N.R.] and some pants for me. It took me about 20 minutes inside the store. I would look out the windows of the store at my car but couldn't directly see [N.R.].
"I finished getting our clothes and went back to the car. I got [N.R.] out of the car seat. He was sweating and crying. I put him in the front seat with me and made him a bottle. A black lady that works at the CCC came out to the car and asked if she could take [N.R.] inside and cool him off. I let her take him inside.
"We went inside and the black lady took him to a room with a white door. I eventually asked for my son back and the black lady opened the white door and gave him back. As I was leaving, the cops showed up. I waited with paramedics while they checked [N.R.] They took him to the hospital. The cop arrested me and took me to the police department."
(R. 191-92.)
Harris testified at trial that N.R. was her first child, that she was 29 years of age, and that she had a college degree. Harris said that on the day she left N.R. in the car she left one of the back windows of her car "cracked" because it was hot. (R. 223.) She said that she did not believe it would harm her son to be in the car "for a short period of time." (R. 235.)
I.
Harris first argues that the evidence was insufficient to support her conviction; therefore, she says, the circuit court erred in denying her motion for a judgment of acquittal. Specifically, Harris argues that the State failed to prove "any injury to the child rising to the level of torture, willful abuse, cruel beating, or otherwise willful maltreatment." (Harris's brief, at p. 28.) She further argues that there was no evidence indicating that her conduct was intentional. (Harris's brief at p. 29.)
Harris was convicted of violating § 26-15-3, Ala. Code 1975. That section provides:
*1205 "A responsible person, as defined in Section 26-15-2, who shall torture, willfully abuse, cruelly beat, or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be guilty of a Class C felony."
Section 26-15-2, Ala. Code 1975, defines a "responsible person" as: "A child's natural parent, stepparent, adoptive parent, legal guardian, custodian, or any other person who has the permanent or temporary care or custody or responsibility for the supervision of a child."
"In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala. Cr. App. 1980), cert. denied, 387 So.2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala. Cr. App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala. Cr. App. 1983) ; Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969) ; Willis v. State.'
" Breckenridge v. State, 628 So.2d 1012, 1018 (Ala. Crim. App. 1993). In addition,
" ' "[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Ward v. State, 557 So.2d 848 (Ala. Cr. App. 1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).' "
" Lockhart v. State, 715 So.2d 895, 899 (Ala. Crim. App. 1997) (quoting Ward v. State, 610 So.2d 1190, 1191-92 (Ala. Crim. App. 1992) )."
Graham v. State, 210 So.3d 1148, 1153-54 (Ala. Crim. App. 2016).
This Court in Woods v. State, 724 So.2d 40 (Ala. Crim. App. 1997), considered the term "willful maltreatment" contained in the child-abuse statute:
" 'The willful maltreatment of a child is encompassed in the definition of child abuse set out in § 26-15-3, Ala. Code 1975. While the statute does not define the term 'willfully maltreat,' that term, like the other terms used in the statute, such as 'torture' and 'willfully abuse,' can be defined by general or common usage and provides an appropriate yardstick for a jury to measure certain conduct. See *1206 Chambers v. State, 364 So.2d 416 (Ala. Cr. App.), cert. denied, 364 So.2d 420 (Ala. 1978). This court has held that the child abuse statute encompasses acts of omission as well as those of commission. Phelps v. State, 439 So.2d 727 (Ala. Cr. App. 1983). Thus, willful maltreatment may result from a willful act or omission that evidences such a serious disregard of the consequences as to cause harm or to threaten harm to a child's health or welfare. See § 26-14-1, Ala. Code 1975. This may include a willful denial of medial care."
724 So.2d at 48, (emphasis added). In Woods, this Court held that evidence of the "willful omission of medial care" presented sufficient evidence to support a conviction for child abuse.
Furthermore, "the question of appellant's criminal intent was properly left to the jury to resolve." Phelps v. State, 439 So.2d 727, 735 (Ala. Crim. App. 1983). "When there is legal evidence from which the factfinders can by fair inference find the accused guilty, this court will not disturb the verdict." 439 So.2d at 735.
As the Missouri Court of Appeals stated in State v. Todd, 183 S.W.3d 273 (2005) :
"The undisputed evidence here ... showed that Todd left her nine-year-old son alone in a locked mini-van in a casino parking lot in the summer sun in 94-degree heat while she gambled. We hold these facts are sufficient, in the totality of the circumstances, for a fact finder to conclude that Todd's conduct presented a substantial risk to the life, body, and health of the child. The risks stemming from leaving children to their own devices, in a vehicle, with the keys, for indeterminate periods of time, in public parking lots, in hot summer sun are self-evident, and the evidence sufficed for the fact finder to conclude that the risk was substantial."
183 S.W.3d at 279. See State v. Morton, 138 Ohio App. 3d 309, 741 N.E.2d 202 (2000) ("Morton first argues that leaving a three-week-old child locked in a van for thirty to forty minutes on a hot summer day did not constitute recklessness. This contention is not supported by the record.").
There was sufficient evidence presented by the State to present the case to the jury for its consideration. The circuit court did not err in denying Harris's motion for a judgment of acquittal. Harris is due no relief on this claim.
II.
Harris next argues that the circuit court erred in refusing to instruct the jury on what she argues is the lesser-included offense of endangering the welfare of a child.
The record shows that Harris moved the circuit court to charge the jury on the offense of endangering the welfare of a child as set out in § 13A-13-6, Ala. Code 1975. (C. 23.) The court expressed concerns whether endangering the welfare of a child was a lesser-included offense of the crime of child abuse. (R. 208.) At this time the court indicated that it would consider the question after hearing the remainder of the testimony. Later, the circuit court ruled that endangering the welfare of a child was not a lesser-included offense of the offense of child abuse and that it would not give the requested instruction.
" 'A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.' MacEwan v. State, 701 So.2d 66, 69 (Ala. Crim. App. 1997). '[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by *1207 any evidence, however, weak, insufficient, or doubtful in credibility.' Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978). An accused has the right to have the jury charged on 'any material hypothesis which the evidence in his favor tends to establish.' Ex parte Stork, 475 So.2d 623, 625 (Ala. 1985). ' "A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.' " Williams v. State, 675 So.2d 537, 540-41 (Ala. Crim. App. 1996), quoting Anderson v. State, 507 So.2d 580, 582-83 (Ala. Crim. App. 1987).
" ' "Whether a crime constitutes a lesser-included offense is to be determined on a case-by-case basis." Aucoin v. State, 548 So.2d 1053, 1057 (Ala. Crim. App. 1989). "In determining whether one offense is a lesser included offense of the charged offense, the potential relationship of the two offenses must be considered not only in the abstract terms of the defining statutes but must also ... in light of the particular facts of each case." Ingram v. State, 570 So.2d 835, 837 (Ala. Crim. App. 1990) (citing Ex parte Jordan, 486 So.2d 485, 488 (Ala. 1986) ; emphasis in original). See also Farmer v. State, 565 So.2d 1238 (Ala. Crim. App. 1990).'
" Ford v. State, 612 So.2d 1317, 1318 (Ala. Crim. App. 1992)."
McNabb v. State, 887 So.2d 929, 973-74 (Ala. Crim. App. 2001).
"Lesser-included offenses encompass, among other things, offenses that are 'established by proof of the same or fewer than all the facts required to establish the commission of the offense charged' or offenses that 'differ[ ] from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, to a lesser kind of culpability suffices to establish its commission.' § 13A-1-9(a)(1), (a)(4), Ala. Code 1975."
Barrett v. State, 33 So.3d 1287, 1289 (Ala. Crim. App. 2009).
As stated above, Harris was indicted for violating § 26-15-3, Ala. Code 1975, quoted in Part I. Endangering the welfare of a child is defined in § 13A-13-6, Ala. Code 1975, which provides:
"(a) A man or woman commits the crime of endangering the welfare of a child when:
"(1) He or she knowingly directs or authorizes a child less than 16 years of age to engage in an occupation involving a substantial risk of danger to his life or health; or
"(2) He or she, as a parent, guardian or other person legally charged with the care or custody of a child less than 18 years of age, fails to exercise reasonable diligence in the control of such child to prevent him or her from becoming a 'dependent child' or a 'delinquent child,' as defined in Section [12-15-102]"
(Emphasis added.)
The State asserts in its brief that, in this case, endangering the welfare of a child is not a lesser offense of child abuse.[2] We agree.
*1208 The indictment against Harris stated as follows:
"The Grand Jury of said County ... charges that before the finding of this indictment, Monica Nyree Harris, whose name is to the Grand Jury otherwise unknown, who had the permanent or temporary care or custody or responsibility for the supervision of [N.R.], a child under the age of 18 years, did torture, willfully abuse, cruelly beat or otherwise willfully maltreat [N.R.] by leaving him in a car with the windows and doors closed when the car was not running and no air conditioning was running, when the temperature was in excess of ninety (90) degrees, a further and better description of said means being to the Grand Jury otherwise unknown, in violation of Section 26-15-3 of the Code of Alabama, against the peace and dignity of the State of Alabama."
Endangering the welfare of a child in § 13A-13-6(a)(1) requires that the accused "knowingly directs or authorizes a child ... to engage in an occupation involving a substantial risk of danger to his life or health." As the State correctly argues in brief such conduct is "not possible with a six-week-old baby." (State's brief, at p. 23.) Endangering the welfare of a child in § 13A-13-6(a)(2) occurs when the accused "fails to exercise reasonable diligence in the control of such child to prevent him or her from becoming a dependant child." This section requires an element, preventing a child from becoming a dependent child, that is not required by the child abuse statute.
The Missouri Court of Appeals in State v. Hines, 377 S.W.3d 648 (Mo. Ct. App. 2012), considered whether the crime of endangering the welfare of a child was a lesser-included offense of child abuse. The statutes involved in Hines are similar to the Alabama statutes at issue in this case. The Missouri Court of Appeals stated:
"The statute under which Defendant was charged provides, '[a] person commits the crime of abuse of a child if such person: (1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old.' Section 568.060.1(1). The State had to prove that Defendant (1) knowingly inflicted; (2) cruel and inhuman punishment; (3) on a child younger than seventeen years old. [State v.] Biggs, 333 S.W.3d [472] 479 [ (Mo. 2011) ].
"Section 568.050.1(1) provides: 'A person commits the crime of endangering the welfare of a child in the second degree if: (1) He or she with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than seventeen years old[.]' To convict a defendant of this offense, the State must show that the defendant (1) acted with criminal negligence, (2) in a manner that creates a substantial risk to the life, body, or health, (3) to a child less than seventeen years old.
"Comparing the elements of each offense demonstrates that the crime of second-degree child endangerment is not a lesser-included offense of abuse of a child because that crime contains an element-creating a substantial risk to the life, body, or health of a child -- that is not present in the offense of abuse of a child. This element 'is intended to prevent any and all types of conduct that involve substantial risk to a child[,]' which encompasses 'many types of conduct other than punishment and abuse [.]' [State v.] Dunson, 979 S.W.2d [237] 243 [ (Mo. Ct. App. 1998) ]. Similarly, the crime of abuse of a child contains an element -- cruel and inhuman punishment -- that is not found in the crime of second-degree child endangerment. This element 'prohibits cruel and inhuman punishment even if it does not create a substantial risk to the life, body or *1209 health of a child.' Id. Neither element is a subset of the other, id., and for this reason, second-degree child endangerment under section 568.050.1(1) is not a lesser-included offense of abuse of a child under section 568.060.1(1). The trial court correctly declined to instruct the jury on endangering the welfare of a child in the second degree."
377 S.W.3d at 658.
Here, the circuit court committed no error in denying Harris's motion to instruct the jury on endangering the welfare of a minor because that crime was not a lesser-included offense of child abuse. Harris is due no relief on this claim.
III.
Harris last argues that the child-abuse statute, § 26-15-3, Ala. Code 1975, is unconstitutionally vague.
The State asserts that this issue is not preserved for appellate review because, it argues, this issue was not raised in the circuit court. A review of the record shows that Harris failed to argue the constitutionality of the child-abuse statute in the lower court. Therefore, this issue is not preserved for appellate review. "Even constitutional issues must be properly preserved for appellate review." Byrd v. State, 10 So.3d 624, 626 (Ala. Crim. App. 2008).
In her reply brief, Harris argues that the Alabama Supreme Court in Davis v. State, 168 So.3d 1210 (Ala. 2015), recognized that this Court could consider the constitutionality of a statute if " 'the act is so palpably void on constitutional grounds that the court, for the protection of public interests, deems it wise to sound the alarm by calling attention to such status.' " 168 So.3d at 1210 n. 1 (quoting Cooper v. Hawkins, 234 Ala. 636, 638, 176 So. 329, 330 (1937) ).
However, the quote cited by Harris is from a dissenting opinion written by a Justice to the denial of a petition for a writ of certiorari. The quote from Cooper, decided in 1937, has not been relied on or cited before the dissenting opinion quoted from it.
For the above reasons, we affirm Harris's conviction for child abuse.
AFFIRMED.
Windom, P.J., and Kellum, Burke, and Joiner, JJ., concur.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Harris cites the case of Pearson v. State, 601 So.2d 1119 (Ala. Crim. App. 1992), to support this argument. However, this Court in Pearson stated: "[W]e need not specifically address that question [whether endangering the welfare of a child is a lesser offense of child abuse] because the State's evidence was legally insufficient to prove either offense, and we reverse on the basis of evidentiary insufficiency." 601 So.2d at 1125.